[S.F. No. 23764. Nov. 16, 1978.]

IRA JAMES BAUGUESS, Plaintiff, v.
WEBSTER PAINE et al., Movants and Respondents;
MAXIM N. BACH, Objector and Appellant.

628

## COUNSEL

Maxim B. Bach, in pro. per., Bach & Bach and Timothy J. Evans for Objector and Appellant.

Marshall W. Krause, Krause, Baskin & Shell, Ephriam Margolin, Herbert M. Rosenthal and Truitt A. Richey, Jr., as Amici Curiae on behalf of Objector and Appellant.

Price, Burness, Price & Davis and Robert L. Davis for Movants and Respondents.

## OPINION

**BIRD, C. J.**—Appellant, plaintiff's attorney in a personal injury suit, was ordered by the trial court to pay respondents $700 in attorney's fees after a mistrial was declared in that action. This court must decide whether the trial court exceeded its authority in issuing that order.

I

Appellant, Maxim N. Bach, represented the plaintiff in the personal injury suit of *Bauguess* v. *Paine.* The trial proceeded uneventfully until the second day, when appellant proposed reading a deposition to the jury. Appellant requested that a diagram, attached to the deposition, be admitted into evidence. Extra copies of the diagram had been made to pass among the jurors for their use in following the testimony. This procedure was approved by the court and the clerk was told to label the copies "6A through M." When appellant requested that "6 go into evidence," the court replied: "6 is in evidence as are 6A through M."

Before the deposition was read, copies of the diagram were passed out to the jurors with the court's explanation: "Ladies and Gentlemen attached to the back of the deposition is a diagram. The diagram has been received in evidence. . . . These are Xerox copies for your use in following the deposition. They are numbered exhibits 6A through M. So you each have a copy. You are free to write on those documents, take notes. At the conclusion of the reading of this deposition those exhibits will be picked up by the bailiff, deposited with the clerk. At the time the case is submitted to you you will have those available in the jury room during your deliberations. So if you want to mark on them, fine, but take a look. You should have Exhibit 6A through M. A should be in the hands of Juror Number 1. And M should be in the hands of the alternate. Keep track of your own exhibit. You may proceed." These copies of the diagram were collected by the bailiff after the deposition had been read.

This same procedure was followed regarding a sketch prepared by the next witness, a highway patrolman. The prepared copies of the sketch were passed among the jury and the court admitted "7A through M *in evidence*, there being no objection." Again, the court instructed the jury, "you're free to mark on *these exhibits* if you want." (Italics added.)[1]

---

[1]The sequence of events was as follows:

"MR. BACH: Your Honor for exhibition's sake I have taken the liberty with no objection to run off thirteen copies of that sketch rather than have the officer redo it or run into problems with the police report.

"Would there be any objection to having the jury—

"MR. DAVIS: Let me take a look at it. No, I have no objection Your Honor.

" . . . . . . . . . . . . . . .

"THE COURT: And do you have the police report that you are offering into evidence, or what—

"MR. BACH: No, I don't think that is proper. That's just a sketch. And I was going to—

"THE COURT: Want it marked for identification as the original or how do you want to handle it?

"MR. BACH: Yes. Could I see the copy you have there Officer?

"THE COURT: Do you need that for your files Officer?

"THE WITNESS: A [*sic*] yes, sir, well I have to return it to the office.

"THE COURT: All right. Then why don't we just go ahead and mark these as Plaintiff's next in order. What was the number you have Madam Clerk?

"THE CLERK: 7 Your Honor.

"THE COURT: 7A through M in evidence, there being no objection.

" . . . . . . . . . . . . . . .

"MR. BACH: Okay.

"(PLAINTIFF'S EXHIBIT NUMBER 7A - M XEROX COPY OF ORIGINAL ACCIDENT REPORT ADMITTED INTO EVIDENCE)

"THE COURT: And 7A through M will now be distributed if you like—

"MR. BACH: Appreciate it Your Honor.

"THE COURT:—to the jurors again. The juror in Seat 1 should have A, and then A through M, the alternate having M.

"And you're free to mark on these exhibits if you want. If you want to take any notes

These exhibits were not collected from the jury at the close of the patrolman's testimony. After another deposition was read, the court, observing that jurors had been taking notes on the diagrams, asked if any juror wanted note paper for the remainder of the trial. The court stated: "But let me advise you that it is all right for you to take notes, but these are your personal notes and they're not to be shared with anyone until the case is finally submitted to you, and then you may refer to them in your deliberations, but until such time they're your own personal notes, not to be shown to anyone, not to be shown to any of your fellow jurors, your spouse or your neighbors, anybody. What we do in long trials is we often pass out spiral notebooks with the jurors' seat number on them and then collect them each night and give them back each morning. On short trials we don't go through that, but you're entitled to take your own notes and keep them. But keep in mind you are to keep your own counsel and you are not to share them with anyone."

The court then collected the exhibits of the highway patrolman's sketch, on which the jurors had taken notes. Note paper was supplied to the jury. Although the jurors were allowed by the court to take their notes home, they were admonished to keep the notes confidential.

After the trial had recessed for the evening and while the judge was engaged with other matters, appellant asked permission of the clerk to examine exhibit 7. He took the exhibit, looked at it briefly, and returned it.

Before trial commenced the next day, the judge remarked that his clerk had informed him that appellant had looked at certain exhibits on which the jurors had taken notes. Appellant responded that he was entitled to do so since the exhibits had been admitted into evidence. The court disagreed, reprimanded appellant, and raised the possibility of a mistrial. Appellant steadfastly maintained he had done nothing improper, that there had been no prejudice to respondents' case and that the error, if any, could be cured if opposing counsel were to view the notes as well. Defense counsel refused and then moved for a mistrial.

An acrimonious discussion ensued between the court and appellant. The court was particularly displeased with appellant's position that once an item had been admitted into evidence, counsel had not only a right

there with the exhibit when you hear the testimony.

"And when the bailiff picks them up then they'll be given to you, returned to you for your use during your deliberations."

but a duty to examine it. Construing this position as an attack on its powers, the court informed appellant that his position constituted contempt of court.[2] When appellant failed to change his position, the court granted respondents' motion for a mistrial.

After the jury was discharged, defense counsel requested attorney's fees for the two days of the aborted trial. The court again expressed displeasure at appellant's position, indicated contempt or other disciplinary proceedings might be in order, and continued the matter for two days.

At the hearing on respondents' motion for attorney's fees, appellant requested that the contempt charges be heard first, since he feared anything said in opposition to the motion for attorney's fees might be used against him in the contempt proceedings. Appellant's counsel further requested that the hearing be postponed until the reporter's transcript of the trial was prepared. The court denied both requests. On the advice of counsel, appellant did not argue the motion for attorney's fees but renewed his standing request that the contempt proceedings be heard first.

The court declared the motion for attorney's fees submitted without opposition because appellant remained mute. Thereafter, the court ordered appellant to pay respondent $700 for attorney's fees as a sanction. The court then reiterated its displeasure, concluding: "[What] would make me happier than anything in the world is to have you just maybe eat a little humble pie and admit that you made a mistake in judgment and it's not going to happen again. That's all I'm after."

---

[2]"THE COURT: . . . Now if you really take the position that the court is, no longer has control over this trial you have taken control by virtue of your stipulation that these matters go into evidence and you can now look at the confidential notes of the jurors. If so then I don't see how we can proceed with the trial. The court has lost total control. And there's no way we can proceed reasonably if that's really your position.

"MR. BACH: I'm not taking the position the court has lost control of the proceedings. I have not said that.

"THE COURT: Are these exhibits notes of the jurors?

"MR. BACH: What I have said is that exhibits that are evidence, yes, those are in evidence and I don't think the court can preclude us from looking at them.

"THE COURT: That's your position? . . . And as long as that is your position Mr. Bach and you're going to continue the course of conduct you have there is no point in proceeding with the trial. We can't try a case that way. And I'm forced to grant the mistrial. I'm trying to salvage this case in the interest of your client.

"MR. BACH: Well I'm trying to assist the court there. I'm willing from this time forward to make a new stipulation in regard to the subject exhibits, of 6 and 7.

"THE COURT: Your position is that the court can't tell you Mr. Bach you're not entitled to look at jurors' notes? You're violating the rules of this court. You're in contempt of this court when you do that.

"MR. BACH: I'm not saying that."

When the hearing resumed the following week, the court again expressed its displeasure at appellant's conduct and formally found him in direct contempt for "violat[ing] the court's order" regarding the diagrams on which the jurors had taken notes. However, the court declined to impose a penalty for the contempt at that time, noting that appellant had already been assessed $700 in attorney's fees for the mistrial. This award was characterized by the court as analogous to probation and restitution in a criminal case and as an alternative to a penalty for contempt. "Now if Mr. Bach is not willing to accept that as an alternative to the contempt then the court is certainly prepared to impose sanctions for contempt as well." This appeal was taken from the order directing appellant to pay attorney's fees in the amount of $700.

II

■■ ■■■■ ˙The sole issue before this court is whether the award of attorney's fees as a sanction for appellant's alleged misconduct was a proper exercise of the trial court's authority.[3]

■ It has been the traditional practice in this country for each litigant to bear his or her own attorney's fees. (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645].) Awards of attorney's fees by courts are the exception rather than the rule. Generally, a court may properly award attorney's fees only pursuant to an agreement of the parties or statutory authority. This principle is codified in Code of Civil Procedure section 1021: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." In the present case, there was no agreement between the parties that would support the trial court's award.

---

[3]The order imposing sanctions is appealable as a final order on a collateral matter directing the payment of money. (*Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 502 [120 Cal.Rptr. 176].) The order imposing sanctions directed appellant personally to pay defendants $700. The order also noted that appellant had made an appearance on his own behalf. Although he was not a party in the main action, he was made a party of record in the collateral matter by the court's order. The order imposing sanctions was a final determination of that matter. Thus, appellant was entitled to appeal that order. (Code Civ. Proc., § 902.) Further, respondents have never contested appellant's standing to appeal the order. The order granting a mistrial is not appealable (e.g., *Estate of Bartholomae* (1968) 261 Cal.App.2d 839, 842 [68 Cal.Rptr. 332]) and is, therefore, not before this court. Appellant apparently did not seek review of the contempt order. (See *In re Buckley* (1973) 10 Cal.3d 237, 240, fn. 1 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].)

█ The Legislature has enacted several statutes authorizing the award of attorney's fees to advance certain public policies. (See generally 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 125-128, pp. 3275-3277.) However, there is no statute which authorizes the award of attorney's fees in personal injury cases. (*LeFave* v. *Dimond* (1956) 46 Cal.2d 868, 870 [299 P.2d 858, 60 A.L.R.2d 939].) █ Some statutes do authorize the use of fee awards as sanctions for conduct which produces unnecessary or unwarranted litigation. (See, e.g., Code Civ. Proc., § 2034 [authorizing the award of attorney's fees as a sanction for the improper refusal to permit discovery].) Usually these awards are assessed against the party or witness, but under certain circumstances both trial and appellate courts are authorized to order *counsel* to pay the opposing party's attorney's fees as a sanction for counsel's improper conduct.[4] However, no statute provides for fee awards as sanctions following a *mistrial* either against a counsel or a party. Respondent concedes this point, but contends that the court had the inherent power to make such an award.

█ Courts have drawn on two distinct sources of power to justify the award of attorney's fees: equitable power derived from the historic power of equity courts (see, e.g., *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 35 [141 Cal.Rptr. 315, 569 P.2d 1303]), and supervisory or administrative powers which all courts possess to enable them to carry out their duties (*Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721]; cf. *Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143, 147-148 [74 Cal.Rptr. 285, 449 P.2d 221]). Although the latter power has been recognized by the Legislature in Code of Civil Procedure section 128,[5] it exists apart from

---

[4]Code of Civil Procedure section 2034, subdivision (d) authorizes an award of attorney's fees against an attorney who wilfully fails to answer interrogatories (*Weinkauf* v. *Superior Court* (1966) 64 Cal.2d 662 [51 Cal.Rptr. 100, 414 P.2d 36]); Code of Civil Procedure section 396b permits attorney's fees to be assessed against an attorney who commences an action in the wrong court. (*Metzger* v. *Silverman* (1976) 62 Cal.App.3d Supp. 30, 38 [133 Cal.Rptr. 355].) Appellate courts may order an attorney who brings a frivolous appeal to pay the opposing party's attorney's fees. (Code Civ. Proc., § 907; Cal. Rules of Court, rules 26(a) and 135(a); *In re Marriage of Milch* (1975) 47 Cal.App.3d 666, 671 [120 Cal.Rptr. 901].)

[5]Section 128 provides in pertinent part:
"Every court shall have power:
". . . . . . . . . . . . . . . . . .
"3. To provide for the orderly conduct of proceedings before it, or its officers;
"4. To compel obedience to its judgment, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein;
"5. To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto."

express statutory authority. (*Bloniarz* v. *Roloson, supra,* 70 Cal.2d at pp. 147-148; see generally 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, §§ 116-118, pp. 385-388.)

■ Courts have used their inherent equitable power in limited situations ·to award attorney's fees when it was warranted by the equities of the case. For example, one who preserves a common fund may recoup his or her attorney's fees from that fund, thus allocating the burden among all those who are to share in the fund. Also, one who acts as a "private attorney general" to further an important public policy, and one who confers a substantial benefit on a defendant or a large class, may be awarded attorney's fees. (See generally *Serrano* v. *Priest, supra,* 20 Cal.3d at pp. 35-47.) In these cases, the fee award serves a dual purpose. It allocates the financial burden of litigation in an equitable manner and provides individuals with an incentive to bring litigation which benefits a larger group.

This court has moved cautiously in expanding the nonstatutory bases on which awards of attorney's fees may be predicated. In *Serrano,* fees were awarded only after careful analysis and a finding that compelling reasons of public policy warranted such an award. Specific guidelines for the exercise of the trial court's power to make such awards were set down. (*Id.,* at pp. 43-47.)

■ In the present case, the fee award was not designed to foster a particular kind of socially beneficial litigation as approved in *Serrano.* Further, the equities of the case do not require shifting the burden to appellant of respondents' attorney's fees incurred for the two days of the aborted trial. ■ ■■■ Appellant was not solely responsible for the events leading to the declaration of the mistrial.[6] Clearly, this case does

---

[6]The court initially created the situation that eventually led to the mistrial. Apparently the court erroneously believed that only items actually admitted into evidence could be passed among the jury. However, if the original or a designated copy had been admitted into evidence, the copies could have been viewed by the jury without having first been admitted into evidence. The court was correct when it warned the jurors to keep their notes confidential. However, when the court admitted them into evidence, it breached this confidentiality. It is clear that any document admitted into evidence may be inspected at any time by counsel. (*Pope* v. *Dalton* (1871) 40 Cal. 638; 31 Cal.Jur.3d, Evidence, § 311, p. 388.) As a part of the judicial record, exhibits may be inspected by the public as well, absent some specific lawful order to the contrary. (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 782-783 [136 Cal.Rptr. 821].) In this case, there was no such order. The court's statements concerning the jurors' notes were simply an admonition to the *jurors* that the notes, which they were permitted to retain, were to be kept confidential. This warning was given when the copies of the diagram (exhibits 7A through M) were taken from the jurors by the bailiff. The warning related to the notes they were to retain not the copies of the diagram, and was not directed at counsel.

not fit within any of the recognized equitable exceptions to the general rule that each party shall pay for its own attorney.[7]

The remaining question this court must decide is whether, absent statutory authority, a court may award attorney's fees as a sanction under its *supervisory* power. Pursuant to this power, a court may take appropriate action to secure compliance with its orders, to punish contempt, and to control its proceedings. (*Bloniarz* v. *Roloson, supra,* 70 Cal.2d at pp. 147-148.) Although a few statutes permit fee awards as sanctions, the appellate courts of this state have generally disallowed such awards based on a theory of inherent supervisory power. (See, e.g., *Wisniewski* v. *Clary, supra,* 46 Cal.App.3d 499 [failure of party to attend mandatory settlement conference]; *Young* v. *Redman* (1976) 55 Cal.App.3d 827 [128 Cal.Rptr. 86] [bad faith defense, failure of party to appear at trial]; contra, *Santandrea* v. *Siltec Corp.* (1976) 56 Cal.App.3d 525 [128 Cal.Rptr. 629].) Even in the discovery context, where attorney's fees are permitted as sanctions under Code of Civil Procedure section 2034, a purely punitive award of $1,000 in attorney's fees has not been allowed. (*Welgoss* v. *End* (1967) 252 Cal.App.2d 982 [61 Cal.Rptr. 52] [sanction not permitted to punish plaintiff's dilatory conduct occurring prior to defendant's seeking a motion to compel].)

Respondents rely chiefly on *Fairfield* v. *Superior Court, supra,* 246 Cal.App.2d 113, 120. However, that slender reed scarcely provides support for the sweeping power respondents would have this court approve. *Fairfield* held that a trial court may award attorney's fees or impose appropriate sanctions if a party refuses to obey an order compelling further answers to interrogatories. That award was upheld as within the exercise of the trial court's inherent power. However, it was only because of the somewhat novel circumstances of that case that Code of Civil Procedure section 2034 did not authorize the award, and it was clearly consistent with the Legislature's intent in enacting the Civil Discovery Act. (Code Civ. Proc., § 2016 et seq.) The present case does not involve these factors.

It would be both unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute. If an attorney's conduct is disruptive of court processes or disrespectful of

---

[7]In *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10], this court declined to consider a further equitable exception to the rule regarding attorney's fees. That case raised the issue whether one who has been required to litigate because of "vexatious and oppressive conduct" of another party may be awarded attorney's fees to penalize that party, absent statutory authority.

the court itself, there is ample power to punish the misconduct as contempt. ■ Moreover, unlike the power advocated by respondent, a court's inherent power to punish contempt has been tempered by legislative enactment to provide procedural safeguards. (Code Civ. Proc., § 1209 et seq.; see *In re McKinney* (1968) 70 Cal.2d 8, 11-13 [73 Cal.Rptr. 580, 447 P.2d 972]; cf. *In re Oliver* (1948) 333 U.S. 257, 274-276 [92 L.Ed. 682, 694-696, 68 S.Ct. 499].) Among these safeguards is the opportunity, in cases where the contempt occurs out of the immediate view and presence of the court, to disqualify the judge pursuant to Code of Civil Procedure section 170, subdivision 5. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 62, pp. 341-342.) Additionally, the Legislature has limited the penalty for civil contempt to five days in jail and a $500 fine. (Code Civ. Proc., § 1218; *In re McKinney, supra,* 70 Cal.2d at p. 10.) Absent such safeguards, serious due process problems would result were trial courts to use their inherent power, in lieu of the contempt power, to punish misconduct by awarding attorney's fees to an opposing party or counsel.

The use of courts' inherent power to punish misconduct by awarding attorney's fees may imperil the independence of the bar and thereby undermine the adversary system. In cautioning trial courts to use their contempt powers with care, this court has repeatedly stressed the importance of permitting counsel to be a vigorous advocate: ■ " 'He has a right to press a legitimate argument and to protest an erroneous ruling.' [Citation.] Indeed, so essential is this 'fundamental interest of the public in maintaining an independent bar' . . . that 'a mere mistaken act by counsel cannot render him in contempt of court. Even if a legal proposition is untenable, counsel may properly urge it in good faith; he may do so even though he may not expect to be successful, provided of course, that he does not resort to deceit or to wilful obstruction of the orderly process.' " (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 560 [68 Cal.Rptr. 1, 440 P.2d 65], quoting *Gallagher* v. *Municipal Court* (1948) 31 Cal.2d 784, 788, 795, 796 [192 P.2d 905]; *In re Buckley, supra,* 10 Cal.3d at p. 249.)

■ The power advocated by respondents is potentially more sweeping in scope than even the power of contempt. If this court were to hold that trial courts have the inherent power to impose sanctions in the form of attorney's fees for alleged misconduct, trial courts would be given a power without procedural limits and potentially subject to abuse. In *Young* v. *Redman, supra,* 55 Cal.App.3d 827, 838-839, under analogous facts, the Court of Appeal observed that "absent legislative action, for us

to declare that the trial court has inherent power to impose such sanctions takes a giant step in expanding the power of the court with sweeping ramifications. Such power in the trial court, unfettered and unbridled, without appropriate safeguards and guidelines, could cancel out any benefits derived to the judicial process by generating a proliferation of appeals. . . . [A]ny power of the trial court to impose such sanctions should be created by the legislative branch of government with appropriate safeguards and guidelines developed following a thorough in-depth investigation. [Fn. omitted.]"

The present case illustrates the dangers which the exercise of such power, "without appropriate safeguards and guidelines," would pose. Although ostensibly awarded to compensate respondents, it appears from the record that the sanctions were prompted more by appellant's vigorous assertion that he had a right to examine the copies of the diagram once they had been admitted into evidence, and his refusal to apologize.

In addition, the procedure which the court followed may not have afforded appellant due process of law. Although the trial judge had not personally observed appellant's alleged misconduct, he heard the sanctions motion. The hearing was based not on the actual record but on the participants' somewhat imperfect memories of the events. Further, appellant, following the advice of his counsel, did not contest the award of attorney's fees because the court would not hear the contempt allegation first. Finally, the court's remarks on the record indicate that it viewed the imposition of attorney's fees as an alternative to the penalty that could be imposed for contempt of court. However, the penalty assessed was in excess of that permitted for contempt. (Code Civ. Proc., § 1218.) Given these circumstances, this court cannot approve the order of the trial court.

The Legislature has provided by statute that awards of attorney's fees may be granted by a court in specific situations. However, the situation presented by this case is not one of them. This case does not fall within the limited number of judicially recognized nonstatutory exceptions to Code of Civil Procedure section 1021. To carve out another judicial exception permitting such an award would pose serious due process problems. For all of these reasons, this court holds that the award of attorney's fees to respondents following a mistrial exceeded the proper limits of the trial court's inherent power.[8]

---

[8]This court specifically disapproves *Santandrea v. Siltec .Corp., supra,* 56 Cal.App.3d 525 to the extent that it is inconsistent with this opinion.

The order directing appellant to pay attorney's fees to respondents in the amount of $700 is reversed.

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.**—I dissent.

The majority purport to hold—without confronting the issue—that an order imposing sanctions on an attorney for misconduct resulting in mistrial of an action in which he appears only in a representative capacity, is an appealable order *in that action.*

In support of such proposition the majority state the rule that a final order on a collateral matter directing payment of money is appealable, citing *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499 [120 Cal.Rptr. 176]. (*Ante,* p. 634, fn. 3.) However, *Wisniewski* stands only for the proposition that such an order is appealable by an aggrieved *party* to the action. The issue here is not whether the order is appealable but whether the attorney has standing to take the appeal in his individual capacity. An appeal may be taken only by a "party" to an action. (Code Civ. Proc., § 902.) Bach is not a party—he is not a designated party and no proper order has been made bringing him into the action. Bach simply cannot assert an appeal in this case. (See *Rogers* v. *Transamerica Corp.* (1935) 6 Cal.App.2d 340 [44 P.2d 635]; *Butchart* v. *Moorhead* (1929) 101 Cal.App. 659 [282 P. 23] [a party dismissed from an action cannot appeal]; *Shearer* v. *United California Theatres* (1955) 133 Cal.App.2d 720 [284 P.2d 934] [a party to an action not named in a cross-action cannot appeal from an order affecting only the cross-action].)[1] Bach's proper remedy is application for either writ of review (Code Civ. Proc., § 1068) or writ of prohibition to circumvent the imposition of sanctions claimed to be applied in excess of jurisdiction (*Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709-710 [39 Cal.Rptr. 891, 394 P.2d 707]). The appeal, accordingly, should be dismissed.[2]

---

[1]Although the circumstances of this case are novel, they are not unlike those in a discovery situation when sanctions are imposed against an attorney who refuses or otherwise fails to comply with a discovery order. (See Code Civ. Proc., § 2034.) An appeal does not lie from an order made for the purpose of furthering discovery or granting sanctions for refusal to make discovery. (See *Lund* v. *Superior Court, supra,* 61 Cal.2d 698, 709; *Friedberg* v. *Friedberg* (1970) 9 Cal.App.3d 754, 764 [88 Cal.Rptr. 451].)

[2]It may be noted dismissal of the appeal herein is not required merely because Bach seeks to appeal from an order the majority hold to be void. It can no longer be argued that because a trial court lacks jurisdiction to make a particular order a reviewing court

Even if Bach may appeal from the order imposing sanctions, the majority further err in concluding the trial court lacks authority to impose such sanctions against Bach. Essential to such determination is a fuller exposure of material facts attending the circumstances preceding Bach's misconduct.

Exhibit 7 consists of a highway patrolman's sketch offered into evidence by Bach in behalf of the plaintiff. Bach advised the court he had made copies of the exhibit for the individual jurors, and certainly we can assume his familiarity with the exhibit. Thereafter the court urged the jurors to make confidential notes on their copies of the sketch during testimony of the patrolman. The court observed that the jurors had done so not only during the patrolman's testimony but also during reading of the deposition of an unavailable witness. Thereupon the court admonished in clear and unambiguous language as to the confidentiality of the notes: ". . . these are your personal notes and they are not to be shared with anyone until the case is finally submitted to you . . . but until such time they're your own personal notes, not to be shown to any of your fellow jurors, your spouse or your neighbors, anybody. . . . [K]eep in mind you are to keep your own counsel and you are not to share them with anyone." This admonition was made in open court in Bach's presence.

It is clear Bach did not casually examine exhibit 7 for the purpose of ascertaining information contained in a duly received exhibit. After proceedings had been recessed he obtained exhibits 7 and 7A through 7M from the clerk, sat in the courtroom examining all exhibits, observing the confidential notes of individual jurors for the purpose of obtaining information which might give him a competitive advantage. In fact he later argued to the court he had a right to examine the jurors' notes appearing on exhibits 7A through 7M notwithstanding direction to the contrary.[3] In view of the court's admonition as to the confidentiality of the notes, delivered that same day in Bach's presence, Bach's misconduct cannot be disputed. His claim he merely exercised a right to examine an exhibit is refuted by his own admission that his purpose was to gain intelligence from the jurors' notes. I am distressed that the majority appear to condone both Bach's astonishing imposition upon the orderly

---

lacks appellate jurisdiction to judge the validity of the order. (See *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363 [217 P.2d 951].)

[3]In stating his position to the court, Bach said: "I do not think the court could have precluded me from looking at these notes in view of the state of this record."

procedures of the court and the disingenuous explanation to which he continues to adhere.

I am unable to discern the precise ground upon which the majority conclude the trial court exceeded its jurisdiction in these circumstances. They suggest that Bach is innocent of any misconduct (*ante,* p. 636, fn. 6) and was in no way restrained from examining the jurors' notes because the admonitions of confidentiality had not been directed specifically to him (*id.*). If that is the ground for the majority opinion, then the majority fail to recognize Bach's stated and obvious motivations.

Most of the majority's following discussion concerning the award of attorney fees is irrelevant to the issue presented—clearly this is not a case involving an award of attorney fees in the traditional sense. What is at issue is the inherent authority of a trial court to supervise and control proceedings by exercising reasonable restraints on counsel practicing before it. The majority conclude that because a court can hold an attorney in contempt there is no need for further controls—thus voiding the lesser power to impose sanctions.

"[E]very court of record has powers requisite to its proper functioning as an independent constitutional department of government . . . ." (*Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143, 147-148 [74 Cal.Rptr. 285, 449 P.2d 221]; see also *Mowrer* v. *Superior Court* (1969) 3 Cal.App.3d 223, 230 [83 Cal.Rptr. 125].) The exercise of this inherent power is limited only by sound discretion. (See *Bailey* v. *Fosca Oil Co.* (1963) 216 Cal.App.2d 813, 818 [4 Cal.Rptr. 474].) Contempt is not the only tool at the court's disposal. A court may adopt "any suitable process or mode of proceeding . . . which may appear most conformable to the spirit of" the Code of Civil Procedure. (Code Civ. Proc., § 187; *Kent* v. *Superior Court* (1951) 106 Cal.App.2d 593, 595 [235 P.2d 420].) While there is no legislative authorization for the sanctions imposed in the instant case, the Legislature has enacted provisions requiring a defaulting attorney to pay attorney fees of an opposing party when such attorney disrupts the judicial process by failing or refusing to comply with discovery orders. (Code Civ. Proc., § 2016 et seq.) In view of such legislation it cannot be said the imposition of almost identical sanctions under the court's inherent powers contravenes any legislative policy or that a court is restricted to its contempt powers in supervising proceedings before it.

In an analogous situation, wherein the court noted there was no legislative authorization for imposition of a sanction—including an order requiring an attorney for one party to pay attorney fees for an opposing

party—when the first party refused to comply with particular discovery orders, the court held: "Every court has power 'to compel obedience to its judgments, orders and process' in an action or proceeding pending before it, and to use all necessary means to carry its jurisdiction into effect, even if those means are not specifically pointed out in the code." (*Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721].)

In another case in which sanctions requiring payment of money to an opposing party were upheld, the court stated: "Every court has the inherent power to regulate the proceedings of matters before it and to effect an orderly disposition of the issues presented. [Citations.] Sanctions are expressly provided for in some situations [citations] but sanctions have also been approved in situations which are not expressly covered by statute or court rules. . . . [¶] . . . Although no direct order of the trial court was disobeyed, the facts support the view that the time of both the court and of opposing counsel was wasted. [¶] The exercise of the court's inherent power to provide for the orderly conduct of the court's business is a matter vested in the sound legal discretion of the trial court. Such a decision is subject to reversal only where there has been an abuse of that discretion." (*Santandrea* v. *Siltec Corp.* (1976) 56 Cal.App.3d 525, 529-530 [128 Cal.Rptr. 629].)

Certainly it cannot be argued the court in the instant case abused its discretion by imposing a sanction in the amount of modest attorney fees for the two days of trial. The court could well consider that a penalty imposed for contempt would not compensate the damaged party for the expense of two wasted days. For that reason there is no abuse when the court elects to exercise its inherent power to impose sanctions rather than fix a penalty for Bach's contempt. The only reported cases support the trial court's action—the majority referring to no case in point supporting their judgment to ignore or disapprove existing authorities.[4]

The order imposing sanctions not being appealable, the appeal should be dismissed.

---

[4]The majority rely on *Young* v. *Redman* (1976) 55 Cal.App.3d 827 [128 Cal.Rptr. 86], for the proposition that a trial court should impose only those sanctions authorized by the Legislature. However, the holding in that case is that the court abused its discretion in imposing the particular sanctions. (*Id.*, at p. 839.)