Filed 4/24/26

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KARLA AMEZCUA,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>MASSAGE ENVY FRANCHISING, LLC,<br><br>    Real Party in Interest. | D087216<br><br>(San Diego County Super. Ct. No. 37-2022-00003915-CU-WT-CTL) |


ORIGINAL PROCEEDING on petition for writ of mandate. Blaine K. Bowman, Judge. Relief granted.

Pokala Law, Kalyan Pokala and J. Patrick Allen for Petitioner.

No appearance for Respondent.

Baker & Hostetler, Ryan D. Fischbach and Xitlaly Estrada for Real Party in Interest.

# INTRODUCTION

Unless "specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." (Code Civ. Proc.,[1] § 1021.) Although there are statutes in our code that permit a trial court to award attorney fees as sanctions for pretrial motion practice under many circumstances, section 473 is not one of them.

For this reason, we grant Karla Amezcua's petition for a writ of mandate directing the trial court to vacate an order that grants her leave to amend the operative complaint, but only if she pays $25,000 to Massage Envy Franchising, LLC (Massage Envy). Neither the court nor Massage Envy invoked the authority of statutes that do allow attorney fees as sanctions (see §§ 128.5, 128.7). Sua sponte, the court awarded attorney fees to penalize delay and inefficiencies in seeking to amend a complaint on the basis of section 473. As we explain, this was not authorized. We grant the requested relief and direct the court to strike the payment condition from its order to the extent it includes attorney fees.

## BACKGROUND[2]

### I.

### *Original Allegations*

In January 2022, Amezcua sued Robert Perez, Securecare, Inc. (Securecare), and 20 DOE defendants for wrongful termination, unfair

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

[2]    Massage Envy filed an unverified response to Amezcua's petition for writ of mandate. An unverified response is ineffective to deny facts alleged in a writ petition. (*Southern California Edison Co. v. Superior Court* (2024) 102

business practices (Bus. & Prof. Code, § 17200), and several Labor Code violations (Lab. Code, §§ 201, 203, 204, 226, 226.7). Securecare is a small corporation run by its sole shareholder and principal officer, Perez. According to the first amended complaint (FAC), filed in January 2023, Securecare was the alter ego of Perez and operated a massage business in the Eastlake area of Chula Vista. The FAC alleged the business was "formerly known as Eastlake Village ME LLC [(Eastlake Village ME)]," but "changed the business'[s] name" to Securecare "[p]rior to January 2019."

The FAC alleged Amezcua worked for Securecare as a massage therapist from August 2011 to December 23, 2019. Among other Labor Code transgressions, Securecare subjected her to "an illegal compensation scheme" that penalized her for taking legally mandated meal and rest breaks by treating her meal and rest breaks as " 'non-productive' time, resulting in a decrease to her hourly rate of pay." According to the FAC, after she complained, Securecare illegally terminated her.

The FAC did not name Massage Envy as a defendant. Massage Envy is a national franchisor, and Securecare does business at its Eastlake Chula Vista location as one of its franchisees.

## II.

### *Discovery*

In June 2022, Securecare served verified discovery responses on Amezcua. In the responses, Securecare averred it was not covered by an insurance policy.

---

Cal.App.5th 573, 583, fn. 2.) As a result, we accept the facts alleged in Amezcua's petition as true.

3

In May 2023, Amezcua deposed Perez. Relevant here, Perez represented that Securecare acquired the Massage Envy franchise location from its owner, Dennis Conklin, pursuant to a written contract[3] in 2018. In response to follow-up production requests, Securecare represented that all documents relating to the sale had been "lost or misplaced."

In June 2024, Amezcua subpoenaed Massage Envy seeking documents relating to the sale. Massage Envy responded to the subpoena with a letter stating it was "the manager of an Arizona-based franchisor and d[id] not own or operate any locations," and that "[a]ny and all subsequent communications . . . should be directed to the franchisee, who is the independent business owner of the franchised location." Massage Envy represented that it would not be producing documents in response to the subpoena and that it had forwarded the subpoena to Securecare.

In October 2024, Securecare amended its discovery responses and produced a set of documents relating to the 2018 purchase. The document production still did not include the written sales contract. Nor did it include an insurance policy.

The parties mediated the dispute in November 2024. According to Perez, in response to a question from the mediator, he disclosed to his attorney for the first time the existence of an insurance policy that could potentially cover Amezcua's claim. Perez and Securecare produced the policy to Amezcua soon after.

---

[3] At some point, both Conklin and Perez also had indirect ownership interests in another entity, ME Imperial Beach LP, which independently operated a Massage Envy franchise in Imperial Beach.

The following three events then occurred on December 13, 2024, after the close of discovery. First, Securecare produced—for the first time—an employment practices liability insurance policy. The primary insured party on the policy was another entity, ME East Village, Inc. (MEEV). According to Perez, he is the sole shareholder of MEEV, which is an entity unrelated to Securecare that owned a separate Massage Envy franchise at a different location. Securecare was covered under the policy as an additional insured. According to Perez, his insurance broker structured the insurance policy to be under the name of MEEV because it costs less than having separate policies for each franchise location. Perez represented he did not provide the insurance policy to his attorney during discovery because he "mistakenly did not believe [Amezcua's] claims were covered" until the mediation.

Second—and again for the first time—Securecare produced the "Business Asset and Franchise Purchase Agreement" between Securecare and Eastlake Village ME (Purchase Agreement). Significant here, the agreement did not provide for a purchase of the entire business entity and a name change, as Amezcua had alleged in the FAC. The Purchase Agreement required Eastlake Village ME to " 'transfer all of its W2 employees working in the [b]usiness to [Securecare],' " and provided that Securecare would " 'not assume, succeed or inherit any of the liabilities of [Eastlake Village ME].' " Amezcua independently learned that Eastlake Village ME had actually terminated its operations in February 2021. Perez claimed, "[a]t the time I received a request from [Amezcua] to produce the [Purchase Agreement], I was unable to locate a copy of it before the deadline to respond. However, I later found it and gave it to my lawyer."

5

Third, Perez and Securecare sought leave to amend their answer to assert two new affirmative defenses. Trial, at the time, was set for January 10, 2025.

III.

*Motion to Amend the Complaint*

On December 23, 2024, Amezcua moved to amend the FAC to add four DOE defendants: (1) Conklin (2) Eastlake Village ME, (3) MEEV, and (4) Massage Envy. Amezcua asserted Securecare's "untimely productions . . . disclosed facts necessitating the naming and addition of four entities and individuals that may share in liability" for the causes of action she had asserted.

As grounds for adding Massage Envy, Amezcua alleged the Purchase Agreement disclosed for the first time that Massage Envy purportedly approved the sale and transfer of Securecare's franchise rights "with terms that would severely prejudice the rights of the franchise's employees and their ability to recover for wage and hour violations and other employment law disputes." Amezcua explained, "Essentially, Massage Envy . . . allowed the sale of franchise rights from one friend to another (with each individual operating through fictitious corporate structures) with the seller ostensibly maintaining obligations for all employee liabilities before terminating its corporate existence and disappearing." Amezcua inferred that Massage Envy had asserted control over the transaction based on the timing of Securecare's production of the Purchase Agreement and other late-produced documents.

In addition, Amezcua asserted the amendment was justified based on testimony by Perez at his May 2023 deposition. He testified Securecare was a member of a "Massage Envy" franchise association that had hired an attorney to prepare a "productivity matrix" to address wage-and-hour

6

lawsuits.  Amezcua inferred from this testimony that Massage Envy should be added as a defendant because it "was responsible for drafting the compensation structure at issue in th[e parties'] dispute."[4]

Securecare opposed the addition of Massage Envy as a defendant on the ground that Amezcua knew its identity from the time she was hired as an employee.

On January 3, 2025, the trial court granted Amezcua's motion to amend the complaint and Securecare's motion to amend its answer.  The court found that, although Amezcua knew the identity of Massage Envy as Securecare's franchisor when she filed the FAC, she was unaware of the facts giving rise to its potential liability.  The court continued the trial to August 29, 2025, and denied Amezcua's request for discovery sanctions against Securecare for the late production of documents.

IV.

*Demurrer*

Securecare amended its answer on January 7, 2025.  Amezcua amended the FAC two days later on January 9.  She served Massage Envy on January 29.  In accordance with the request Amezcua had made to the trial court, the amendments substituted Conklin, Eastlake Village ME, MEEV,

_____

[4]    It is unclear from Perez's testimony whether the wage-and-hour lawsuits that were addressed by the productivity matrix were filed against Massage Envy or its franchisees (or both).  It is also unclear whether Massage Envy had a relationship with the "Massage Envy" franchise association or whether the association was comprised and run entirely by franchisees doing business as "Massage Envy."  Later during the underlying proceedings, on July 3, 2025, Perez signed a declaration stating that he did not mean to attribute the creation of the productivity matrix to Massage Envy.

7

and Massage Envy for the first four DOE defendants, but did so without change to any of the substantive allegations in the body of the FAC.

On March 10, 2025, Massage Envy met and conferred with Amezcua about a potential demurrer to the FAC. The parties agree the FAC did not contain factual allegations sufficient to state a claim against Massage Envy. But they do not agree as to what transpired at the meeting.

Massage Envy claims it explained the bases for its proposed demurrer, and pointed out that the FAC "made no mention of [Massage Envy] or any alleged actions giving rise to the claims [Amezcua] brought." Counsel for Amezcua allegedly responded by saying that, "while he usually would agree to amend the FAC and fix the deficiencies . . . , here he was not going to amend the FAC in light of the matter's late procedural stage and the [trial court's] previous orders concerning [Amezcua's] prior requests for leave to amend." As a result, Massage Envy was "[l]eft with no other choice" but to file a demurrer, which it did on March 17, 2025.

The demurrer asserted the FAC was deficient for two reasons. First, it failed to allege a factual basis to support the claims against Massage Envy. Second, because Massage Envy's only relationship to Amezcua was "that of the franchisor of her alleged employer," Amezcua could not state a viable legal theory for vicarious liability as a matter of law. The demurrer specifically asked the court to deny leave to amend because " 'under the applicable substantive law it is plain that there can be no liability.' " Counsel for Massage Envy filed a declaration in support of the demurrer in which he averred that parties met and conferred in good faith but "failed to reach an agreement concerning [Massage Envy's] objections to the [FAC]."

According to Massage Envy, it was not until one month later, on April 15, 2025, that Amezcua's counsel "for the first time . . . expressed . . . intent

8

to seek to amend the FAC." Counsel asked if Massage Envy would stipulate to an amended complaint, and Massage Envy responded that it would consider stipulating but would need to see the proposed amendment. Massage Envy then sent a confirming letter that stated, "As we discussed in our prior meet and confer, we agree that the current complaint is deficient as to Massage Envy . . . . We are not certain how your client intends to amend . . . , but if we can streamline future motion practice and/or resolve concerns efficiently, that would be our preference as we previously noted. To that end, please let us know when you expect to have your further amended complaint ready for our review."

Amezcua did not respond to this letter. Instead, she filed an opposition to the demurrer in which she conceded the FAC was factually deficient as to Massage Envy. But she did not concede she could not state a claim as a matter of law. She contested Massage Envy's position that "its status as a franchisor . . . dispositively preclude[d] a finding of joint employer status." She argued, "A franchisor is not presumed to be a joint employer of its franchisee's employees, but it still can be found to assume that role based on the specific factual circumstances at play." Based on her understanding of the law, she argued, "If the relationship between franchisor and franchisee is one in which the franchisor either retains the right to substantial control over the franchisee or exercises such control in fact, an agency or joint employer relationship exists."

Amezcua asked to amend the operative complaint and attached a proposed second amended complaint (proposed SAC). The proposed SAC alleged Massage Envy exercised oversight amounting to joint employer control over Securecare in two ways. First, it alleged Massage Envy participated in structuring the Purchase Agreement so potential Labor Code

9

violations would "remain with a corporate entity that would be insolvent." Second, it alleged Massage Envy developed the productivity matrix that governed Amezcua's compensation while she worked at Eastlake Village ME and Securecare.

In its reply brief, Massage Envy continued to argue its demurrer should be sustained without leave to amend based on the same arguments it had raised in its moving papers. Massage Envy contended the proposed SAC was "still defective and deficient," it contained "no viable credible facts . . . to support a claim against [Massage Envy]," and the allegations were "legally insufficient to impose joint employer, agency, conspiracy, or vicarious liability on a national franchisor that, by her own allegations, did not hire, pay, supervise or terminate her." It argued Amezcua's "legal theories [were] also contrary to . . . established California precedent . . . foreclosing joint-employer liability based on franchisor brand oversight." And it continued to argue the proposed SAC was untimely because the allegations were based on Perez's May 2023 deposition testimony.

Massage Envy, in addition, informed the trial court of its version of the meet-and-confer meeting. Massage Envy asserted Amezcua should be denied leave to amend because she failed "to meet and confer in good faith," and "declined [its] subsequent outreach to possibly avoid . . . unnecessary law and motion practice." Massage Envy claimed Amezcua "should not have forced [it] to incur the time and expense of preparing the [d]emurrer, wasted months of the parties' time waiting for the hearing, or burdened the [c]ourt with hearing a conceded motion." Yet, as noted, Massage Envy continued to assert the FAC could not be amended to state a claim as a matter of law.

10

## V.

### *Attorney Fees and Costs*

The trial court issued a tentative ruling on July 10, 2025. The tentative ruling sustained Massage Envy's demurrer, and granted Amezcua's request for leave to amend.

*Sua sponte*, however, the tentative ruling conditioned leave to amend upon payment of "the amount of attorney[ ] fees and costs incurred by [Massage Envy] in meeting and conferring . . . regarding [its] demurrer and in preparing [its] moving and reply papers." The ruling ordered Massage Envy to file a declaration setting forth the amount of its attorney fees and costs. Massage Envy complied that same day by filing a declaration seeking $78,668.90.

After the hearing on July 11, 2025, the trial court continued the matter and set a briefing schedule to address two issues raised by Amezcua: (1) the reasonableness of the amount of attorney fees and costs requested by Massage Envy, and (2) Amezcua's contention that the court's order conditioning leave to amend on the payment of attorney fees and costs was improper because it was "a de facto imposition of sanctions."

In the brief she filed next, Amezcua set forth her version of events at the parties' meet-and-confer meeting. According to Amezcua, her counsel admitted the factual allegations in the FAC were insufficient to state a claim. In response, however, Massage Envy's counsel allegedly said "it was their position that [Massage Envy] could not be found to be a joint employer as a matter of law," and that dismissal of the action was therefore required. Thus, although Amezcua was willing to "amend the [FAC] to broaden the allegations to encompass [Massage Envy]," "given the impasse between the parties regarding whether such amendment would state a legally-cognizable

11

claim, [counsel] proposed that the most expeditious course of action would be to proceed with the filing of the demurrer." After the demurrer was filed, Amezcua "would present the proposed amendments so the [trial court] could simultaneously weigh the entirety of [Massage Envy's] legal challenges to the complaint and the sufficiency of the proposed amendments in a single instance[ ]."

Amezcua explained her counsel's "intent in proposing this procedure was to avoid the duplicative motion practice that would be inherent in engaging in motion practice relating to leave to amend the complaint that would proceed either contemporaneously or consecutively with [Massage Envy's] remaining challenge to the legal sufficiency of the allegations against it." The "proposal was based on a desire to streamline the briefing before the [c]ourt and not due to dilatory tactics," and counsel's "understanding was that [Massage Envy] was in agreement with the proposed procedure."

Amezcua further contended the trial court would err if it maintained its tentative ruling conditioning leave to amend on the payment of Massage Envy's attorney fees and costs. She asserted the "authority to shift attorney[ ] fees and costs from one party to another must be grounded in either the agreement of the parties or in statute," and the court had erred because it had not proceeded pursuant to the statutory authority for imposing sanctions for bad-faith actions and tactics that is set forth in section 128.5. Nor could the court award sanctions pursuant to section 128.5, she argued, because her actions were not made in bad faith, frivolous, or solely intended to cause unnecessary delay.

In response, Massage Envy disputed the accuracy of Amezcua's version of events. And it asserted the trial court could "condition amendment [of the complaint] on equitable terms, including payment of the opposing party's

12

attorney[ ] fees and costs," either pursuant to section 473, subdivision (a), or as a form of sanctions pursuant to section 128.5.

On September 22, 2025, the trial court confirmed its tentative ruling sustaining Massage Envy's demurrer and granting Amezcua leave to amend the FAC. Relying on section 473, subdivision (a), the court also affirmed that leave to amend would be conditioned on payment of Massage Envy's reasonable attorney fees and costs. The court found $25,000 to be reasonable, not $78,668.90.

In support of its ruling, the trial court stated, "the evidence [Amezcua] relies on to support the allegations of [her] proposed [SAC] is the deposition testimony of . . . Perez. This deposition took place on May 4, 2023, well prior to December 24, 2024, the date [Amezcua] filed [her] motion to amend to name [Massage Envy] as a [DOE] defendant, and well prior to the January 3, 2025, hearing on [her] motion for leave to name [it] as a [DOE] defendant. In light of this evidence, [Amezcua] fails to adequately explain why [she] did not seek leave to amend to include substantive allegations against [Massage Envy] when [she] sought leave to amend to name [it] as a [DOE] defendant. Moreover, [she] fails to adequately explain why [she] did not seek leave to amend in response to [Massage Envy's] meet and confer efforts prior to [it] filing the instant demurrer. Had [she] done so, this demurrer would not have been necessary and [Massage Envy] would not have incurred attorney[ ] fees and costs in bringing it. Based on the evidence before the court, [Amezcua] had at least two opportunities to avoid the court ruling on this demurrer and chose not to do so. [Her] counsel's declaration states that [she] instead decided to wait for [Massage Envy] to file its demurrer and seek leave to amend in response thereto. Such conduct is incongruent with [Amezcua's] acknowledgement during the meet and confer process that [her] complaint

13

was deficient as to [Massage Envy], and is also antithetical to the purpose behind the [section] 430.41 meet and confer requirement."

DISCUSSION

The trial court erred when it conditioned leave to amend on the payment of Massage Envy's attorney fees. Subject to narrow exceptions not relevant here,[5] courts may not order the payment of attorney fees to an opposing party unless they do so pursuant to statutory authority or an agreement by the parties: "Except as attorney[ ] fees are *specifically* provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." (§ 1021, italics added.)

Section 473, subdivision (a), relied upon by the trial court here, contains no such provision. It provides:

> "(1) The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect; and may, upon like terms, enlarge the time for answer or demurrer. The court may likewise, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars; and may upon like terms allow an answer to be made after the time limited by this code.

---

[5] "Courts have used their inherent equitable power in limited situations to award attorney[ ] fees when it was warranted by the equities of the case. For example, one who preserves a common fund may recoup his or her attorney[ ] fees from that fund, thus allocating the burden among all those who are to share in the fund. Also, one who acts as a 'private attorney general' to further an important public policy, and one who confers a substantial benefit on a defendant or a large class, may be awarded attorney[ ] fees." (*Bauguess v. Paine* (1978) 22 Cal.3d 626, 636 (*Bauguess*).)

14

"(2) When it appears to the satisfaction of the court that the amendment renders it necessary, the court may postpone the trial, and may, when the postponement will by the amendment be rendered necessary, require, as a condition to the amendment, the payment to the adverse party of any costs as may be just." (§ 473, subd. (a).)

The trial court's error is understandable.  Several major treatises on California law interpret case law authority to hold that the provision in section 473, subdivision (a)(1), that allows leave to amend a pleading to be conditioned " 'on such terms as may be proper' " authorizes courts to condition leave on payment of opposing counsel's attorney fees.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) ¶ 6:663, p. 6-198; Griffith, Jr. et al., 49A Cal. Jurisprudence (3d ed. 2026) Pleading, Amendment and Withdrawal, § 219; 5 Witkin, Cal. Procedure (6th ed. 2021) Amendment of Pleadings, § 1238, p. 649.)  We do not read the relevant cases so broadly.

The first case, *Fuller v. Vista Del Arroyo Hotel* (1941) 42 Cal.App.2d 400 (*Fuller*), makes no specific mention of attorney fees.  Consequently, in our view, the opinion cannot fairly be read to have addressed attorney fees as part of its holding.

In *Fuller*, shortly after trial commenced, the trial court granted the defendant's motion to amend the answer, but conditioned leave to amend on payment by the defendant of " 'all the expenses of the delay.' "  (*Fuller*, *supra*, 42 Cal.App.2d at p. 404.)  The court of appeal upheld this ruling as a proper

15

exercise of discretion based on a former version of section 473.[6] But all we know about the details of this ruling is that the trial court told the plaintiff, "[The defendant] is going to pay all expenses you incurred up to date. You are entitled to and you will get the doctor's expense and anybody else that you hired to come here to testify. You are entitled to that, and all the other expenses you have." (*Fuller*, at pp. 404–405.) This statement by the trial court does not mention attorney fees, and so, we cannot conclude definitively from the court of appeal's opinion whether the "expenses" it found authorized by section 473 included attorney fees—or not.

The second case, *Williams v. Myer* (1907) 150 Cal. 714 (*Williams*), is not as clearcut as *Fuller*. In *Williams*, the trial court was also faced with a request for leave to amend that necessitated postponement of trial shortly after it had started. (*Williams*, at p. 716.) The version of section 473 in effect at the time, as is the case today, allowed the trial court to condition leave to amend a pleading "upon such terms as may be just." (Stats. 1917, ch. 159, § 1, p. 242.) Based on this provision, the court imposed terms on the plaintiff as follows: " 'Plaintiff to pay to the clerk of this court for the county the per diem and mileage paid by it and due from the county, to jurors summoned for this trial amounting to the sum of $240.90; plaintiff to pay to defendant the sum paid by defendant to the clerk of this court for the fees of jurors

---

[6] The relevant language in the former version of section 473 is materially indistinguishable from the language in effect today. The former version of the statute permitted amendment "upon such terms as may be just," and more specifically provided that such amendments could be conditioned on "the payment to the adverse party of such costs as may be just" if the amendment "rendered necessary" the postponement of trial. (Stats. 1933, ch. 744, § 34, p. 1851.)

amounting to the sum of twenty-four dollars; plaintiff to pay to the defendant the sum of $56.50 expenses incurred by the defendant in obtaining the attendance of witnesses; plaintiff to pay to defendant one hundred dollars as compensation to defendant *for expenses he has incurred in employment of attorneys herein,* his own expense in attending this trial, and the expense he has been to on account of this trial and that cannot be easily determined by the court or shown by the defendant,'—in all $421.40." (*Williams,* at p. 717, italics added.)

Addressing each of the listed items, our high court held it was improper to condition leave to amend on reimbursement to the county clerk of the payments made to jurors for their per diem and mileage expenses, but proper to condition leave on payment of their fees. The court held it was proper as well to condition leave on payment of "the expenses incurred by the defendant in obtaining the attendance of witnesses." (*Williams*, *supra*, 150 Cal. at pp. 718—719.) The court further held it was proper "to require the payment of one hundred dollars to defendant as compensation *for expenses incurred in the employment of attorneys* and his own expenses in attending the trial." (*Id.* at p. 719, italics added.) The court explained, "In imposing such terms it is not to be understood that the court is constrained to allowing a party only such costs as might be properly taxed in the case. A reasonable discretion may be exercised in compensating [the defendant] for expenses to which he has been put, although they may not be recoverable as costs." (*Id.* at p. 718.)

The holding by our high court—that trial courts have discretion to condition leave to amend on payment of "expenses incurred in the employment of attorneys"—sounds at first blush to potentially include the payment of attorney fees in addition to other attorney-related expenses

17

incurred at trial. (*Williams*, *supra*, 150 Cal. at p. 719.) It specifically refers to "the employment of attorneys." Yet, the phrase "expenses incurred in the employment of attorneys" is a singularly odd way to refer to "attorney fees and expenses." Why not call a fee a fee?

The Supreme Court was careful in the rest of its opinion to distinguish between jury "fees" and juror expenses in the form of "per diem" allowances and "mileage." (See *Williams*, *supra*, 150 Cal. at pp. 717—720.) In our view, the failure to say "attorney fees" when referring to the payment of attorney fees would be a glaring and inexplicable omission by our high court in light of California's adoption of the " 'American rule,' " at the time of its founding, "under which each party to a lawsuit ordinarily must pay his or her own attorney fees." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.) On balance, we do not believe the court would hold that leave to amend could be conditioned on payment of the opposing party's attorney fees without explicitly saying so.

Regardless, any possible ambiguity in *Williams* is ultimately of no consequence. When *Williams* was decided, the Legislature had not yet amended section 473 to specifically address the payment conditions that may be imposed when an amendment to the pleadings requires postponement of a trial. In 1933, section 473 was modified to add the provision that now appears in subdivision (a)(2). (Stats. 1933, ch. 744, § 34, p. 1851.) As noted, when trial must be postponed, section 473, subdivision (a)(2), now provides that leave to amend may be conditioned on the payment of "costs" under such circumstances: "When it appears to the satisfaction of the court that the amendment renders it necessary, the court may postpone the trial, and may, when the postponement will by the amendment be rendered necessary, require, as a condition to the amendment, the payment to the adverse party

18

of any *costs* as may be just." (Italics added.) To the extent *Williams* concluded that courts have discretion when trial must be postponed to condition leave to amend on payment of "expenses . . . although they may not be recoverable as costs," including attorney fees, its holding had been superseded by statute. (*Williams*, *supra*, 150 Cal. at p. 718.) Section 473, subdivision (a)(2), now expressly provides otherwise.

To the extent *Williams* can be read more broadly, to allow leave to amend to be conditioned on payment of attorney fees whenever it appears that such terms "may be just," it is also no longer good law. (§ 473, subd. (a).) In 1933, the Legislature amended section 1021 to expressly provide that, in the absence of an agreement by the parties, attorney fee awards by courts are authorized only as "specifically provided for by statute." (Stats. 1933, ch. 744, § 180, p. 1899.) In light of this language, our high court held in 1978 that trial courts do not have inherent supervisory power to order payment of attorney fees as a sanction. Such orders must be founded on express statutory authority. (*Bauguess*, *supra*, 22 Cal.3d at p. 639.) Manifestly, section 473, subdivision (a), does not include a provision that specifically authorizes the award of attorney fees to an opposing party, conditionally or otherwise.

We conclude the trial court here misapprehended its authority to condition leave to amend the FAC on payment of Massage Envy's attorney fees. Section 473, subdivision (a), does not authorize fee-shifting orders as a means to address improper litigation tactics in the context of amendments and challenges to the pleadings.

For future guidance, we observe that the trial court justified its conditional award of attorney fees based on two grounds that are problematic given the statutory scheme that is in place. First, the court found that

19

Amezcua acted in a way that was "antithetical" to her meet and confer obligations under section 430.41, the statute that requires the parties to meet and confer about potential demurrers and amendments to the pleadings. This basis for conditionally shifting attorney fees was inappropriate because section 430.41 not only contains no provision that authorizes fee shifting, it provides that "[a] determination by the court that the meet and confer process was insufficient shall not be grounds to overrule or sustain a demurrer." (§ 430.41, subd. (a)(4); see generally *Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 355.) The court's ruling here, conditioning leave to amend on the payment of $25,000 in attorney fees, indirectly violated this provision against sustaining a demurrer based on a failure to meet and confer.

Second, the trial court found that Amezcua did not adequately explain why she did not amend the FAC to include the necessary substantive allegations against Massage Envy when she sought leave to amend to name Massage Envy as a DOE defendant. This basis for shifting attorney fees was inappropriate because attorney fee awards for frivolous filings, actions, and litigation tactics are permitted by statute only after compliance with substantial procedural protections, including as a 21-day safe harbor provision for improper filings, and only when supported by very specific factual findings, such as bad faith or intent "to harass or to cause unnecessary delay or needless increase in the cost of litigation." (See §§ 128.5, 128.7.) Those procedural protections were absent here.

## DISPOSITION

Let a writ of mandate issue directing respondent Superior Court to strike the payment condition, to the extent it includes attorney fees, from its order sustaining Massage Envy's demurrer and granting Amezcua leave to

20

amend.  Costs are awarded to Amezcua.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

DO, J.

I CONCUR:


RUBIN, J.


I CONCUR IN THE RESULT:


O'ROURKE, Acting P. J.