Filed 12/15/23  Jones v. City of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANTWON JONES, | B313095 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC577267) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent; | |
| MICHAEL J. LIBMAN et al., | |
| Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed in part, reversed in part and remanded.

Law Offices of Michael J. Libman and Michael J. Libman for Appellants.

Kabateck, Brian S. Kabateck, Anastasia K. Mazzella and Hugo B. Flores for Plaintiff and Respondent.

Annaguey McCann and Kathryn L. McCann; Ellis George Cipollone O'Brien and Eric M. George; Hydee Feldstein Soto, City Attorney, Kathleen A. Kenealy and Julie C. Riley Deputy City Attorneys for Defendant and Respondent.

_____

Attorney Michael J. Libman and Law Offices of Michael J. Libman, APC (collectively Libman), purported to represent ratepayer Antwon Jones, individually and on behalf of a class, in consolidated class action lawsuits that were brought against the City of Los Angeles based on inaccurate billing by the Los Angeles Department of Water and Power (LADWP).  As part of a settlement with the City that was approved by the trial court, Libman was awarded attorney fees of $1.65 million plus costs. Following revelations that some of the attorneys who negotiated the settlement represented both the City and the class, the trial court instituted proceedings to reevaluate whether the settlement was fair and reasonable, including the award of attorney fees.  As a result of these proceedings, the court entered an order requiring Libman to disgorge all of the fees that he received.  The court entered a second order imposing monetary sanctions of approximately $116,000 and nonmonetary sanctions based on Libman's discovery misconduct during the proceedings.  Libman appeals from both orders.[1]  Ultimately, we affirm the nonmonetary sanctions imposed and the disgorgement of $1.65

_____

[1] The motions seeking discovery sanctions and disgorgement were filed by Jones alone.  On appeal, the City filed a brief as a purported respondent joining in the contentions made by Jones.

2

million in attorney fees, but reverse the monetary sanctions of approximately $116,000, as explained below.

With respect to the sanctions order, Libman contends on appeal that: (1) the court's inherent supervisory authority does not include the power to award attorney fees as a sanction; (2) the Civil Discovery Act (Discovery Act: Code Civ. Proc., § 2016.010 et seq.)[2] does not authorize sanctions against a nonparty; (3) the trial court abused its discretion by awarding both non-monetary and monetary discovery sanctions against Libman for asserting a constitutional privacy right; and (4) the trial court abused its discretion by imposing both non-monetary and monetary sanctions for lost electronically stored information.

We conclude that nonmonetary sanctions were properly imposed under the trial court's inherent authority to control the proceedings before it, but the trial court did not have the power to impose monetary sanctions in this case pursuant to its inherent authority or the discovery statutes. The sanctions order must be modified to delete the award of monetary sanctions, and as modified, we affirm.

With respect to the disgorgement order, Libman contends on appeal that: (1) the disgorgement order exceeded the trial court's authority to order injunctive relief; (2) the disgorgement order is not supported by substantial evidence that Libman violated the California Rules of Professional Conduct;[3] (3) denial of discovery violated his due process rights; (4) the disgorgement order is an excessive fine; (5) the trial court lacked authority

_____

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

[3] All further references to rules are to these rules.

3

under Code of Civil Procedure sections 128 and 664.6 to order disgorgement; and (6) the trial judge should have recused himself.

Because Libman failed to set aside the order imposing nonmonetary sanctions, which included striking his opposition to the motion for disgorgement and entering his default, the issues that he may raise on appeal from the disgorgement order are correspondingly limited.  Even were we to consider the issues on the merits, however, we would affirm.  The disgorgement order is a money judgment, not injunctive relief, and it is supported by substantial evidence of egregious violations of the rules for ethical conduct.  It is not an excessive fine.  The trial court properly exercised its authority in ordering disgorgement, and we find no basis for the trial court's recusal.  Therefore, we affirm the disgorgement order.

# FACTS AND PROCEDURAL HISTORY

**<u>Background</u>[4]**

In 2013, the Los Angeles Department of Water and Power (LADWP) implemented a new billing system designed by PricewaterhouseCoopers (PWC) which resulted in thousands of inaccurate billing statements to LADWP customers.  LADWP customers began filing lawsuits against the City of Los Angeles in December 2014 in connection with the billing errors.  On December 9, 2014, LADWP customer Antwon Jones entered into a written attorney-client fee agreement with attorney Paul Paradis of Paradis Law Group.

Paradis and attorney Paul Kiesel met with an attorney at the City, after which the City agreed to retain Paradis and Kiesel as special counsel to represent the City against PWC in connection with the billing program.

In January 2015, Paradis sent Jones a draft for a class action complaint against PWC (the draft complaint).  Paradis, Kiesel, and attorney Gina Tufaro were listed as counsel for Jones in the draft complaint.  Jones was not aware that Paradis and Kiesel were also acting as special counsel for the City.  The draft complaint was never filed.

Paradis was unable to obtain a conflict waiver from the

---

[4] In accordance with the standard of review, we state the facts in the light most favorable to the judgment. (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 387 (*Meister*).)  Many of the background facts are drawn from the October 2019 report of ethics attorney Ellen Pansky to the Los Angeles City Attorney's Office, which both parties relied on in their briefs on appeal.

City to represent both the City and a ratepayer. In February 2015, Paradis suggested Ohio attorney Jack Landskroner could represent Jones. Kiesel suggested Libman to serve as local counsel in California.

On March 3, 2015, Kiesel informed Libman that Paradis was drafting a complaint for Jones's class action against the City. He asked for Libman's state bar number to add to the complaint.

**Lawsuits Filed**

On March 6, 2015, Paradis, Kiesel, and several of the City's attorneys filed a lawsuit on behalf of the City against PWC (the PWC action). The complaint alleged claims arising out of the billing system that PWC designed for the LADWP. The PWC action was assigned to Judge Elihu M. Berle.

On March 24, 2015, Paradis sent a draft of a claim notice for Jones to Kiesel, asking him to send it to Libman to sign. Kiesel sent the notice to Libman with a reminder to sign it.

Paradis introduced Jones to Landskroner. Jones believed Paradis and Landskroner were filing a complaint for him against the City. Landskroner provided a final draft of Jones's class action complaint to Libman with directions to file it.

On April 1, 2015, Libman filed Jones's class action complaint against the City, listing Libman and Landskroner as counsel for Jones and alleging claims arising from the inaccurate bills (the Jones class action). The Jones class action was also assigned to Judge Berle.

After the Jones class action complaint was filed, Jones communicated solely with Landskroner. Jones never met Libman or understood Libman to be his counsel.

6

The other class actions filed against the City were found to be related to the Jones class action, and the Jones class action was designated as the lead case (collectively referred to as the class action).

In July 2015, Libman associated Kiesel as cocounsel in an unrelated personal injury lawsuit. Libman and Kiesel conducted a trial in the personal injury case between August 10 and August 20, 2015. They obtained a $2.5 million verdict, after which the parties in that case reached a confidential settlement. Kiesel received at least $500,000 for his work on the case.

In August 2015, four months after the Jones class action was filed, a proposed settlement was reached with the City. The trial court did not initially approve the settlement, however, because of concerns expressed by the court and the counsel in the related cases.

In September 2015, Libman associated Kiesel as cocounsel in a case against a home repair store, which went to trial a few weeks later and resulted in a $1.415 million verdict.

In December 2015, Paul L. Bender was appointed as the independent court monitor in the class action.

In May 2017, Jones filed a motion for final approval of the settlement and an award of attorney fees. Jones executed a declaration in support of the motion that referred to Landskroner as "class counsel" and to Libman as "liaison counsel." Jones declared that he approved of his class counsel's request for attorney fees and costs based on the high quality work that class counsel performed and the benefits of the settlement for the Jones class.

**Libman Declaration Supporting Request for Attorney Fees**

Libman submitted a declaration in support of his request for attorney fees for his work as class counsel.  He declared that his firm expended 1,444 hours in the litigation, and he personally worked 1,340 hours.  He attached monthly time reports of the work that his firm performed, as well as charts dividing the work into different categories.  He represented that his firm prepared the charts from contemporaneous daily time records that the firm maintained.

He submitted his firm resume.  Under the title "Wage and Hour and Consumer Class Actions (Co [ ] Counseled with Kingsley and Kingsley)," Libman listed 32 cases and stated: "Since 2005 the Libman firm successfully collaborated and co [ ]counsel[ed] with Kingsley & Kingsley in class actions and consumer protection litigations."

Libman's billing litigation summary for work attributable to the Jones class action showed Libman worked 31.75 hours in November 2013, and 25.5 hours in December 2013, at a rate of $575 per hour.  In 2013, his paralegal performed 2.5 hours in November and 1.5 hours in December.  The tasks that Libman listed having performed in 2013 were factual investigation and communication with the client/class member.

Libman's billing summary for 2014 listed 43.5 hours in January, 23.25 hours in February, 12 hours in March, and approximately 20 hours per month thereafter, for a total of 253.75 hours expended in 2014.  229.75 of those hours were spent on factual investigation, 5.5 hours were spent drafting the initial

and amended complaint, and 18.5 hours were spent communicating with the client/class member. His paralegal also spent 3.5 hours drafting the initial and amended complaint in 2014.

His 2015 summary similarly listed a total of 256.25 hours worked. He claimed his time was spent on a wider variety of tasks in 2015, including 23 hours drafting the initial and amended complaint. In 2016, he listed 478.5 hours expended, including 22.75 hours working with the independent court monitor on confirmatory discovery. For the first five months of 2017, he listed 294.25 hours.

Libman did not disclose his working relationship with the City's special counsel Kiesel to the trial court or to Jones.

## Entry of Judgment in the Class Action

The motion for approval of the settlement and an award of attorney fees was heard on July 7, 2017, by Judge Berle. Libman identified himself at the hearing as appearing for Jones and as class liaison. The court explained that although the burden was on the proponent of the settlement to establish that the settlement was fair and reasonable, there was a presumption of fairness when the settlement was reached through outside bargaining, the investigation and discovery were sufficient to allow counsel and the court to act intelligently, counsel was experienced in similar litigation, and the percentage of objectors was small. In ruling that the settlement was entitled to a presumption of fairness, the court relied on the fact that the settlement negotiations and the mediation were undertaken in good faith and at arm's length at all times. The court also

9

concluded that the settlement was fair and reasonable in part because the plaintiffs understood there would be risk involved in continuing the litigation, and class counsel believed the settlement was fair, reasonable, and adequate.

On July 20, 2017, the trial court entered an order approving the class action settlement and awarding a total of $19 million in attorney fees to counsel for the various class actions. The City paid $19,241,003.99 to Landskroner, from which attorney fees and costs were distributed to the other attorneys in the consolidated cases. Libman received $1.65 million for attorney fees and $3,370.01 for expenses.

During discovery proceedings in the PWC case, Paradis's simultaneous representation of Jones and the City was revealed. Ultimately, in March 2019, Landskroner filed a motion to be relieved as class counsel in the Jones class action.

**Appointment of New Class Counsel and Discovery Orders**

At a hearing in the Jones class action in April 2019, the trial court appointed attorney Brian S. Kabateck as the new class counsel. The trial court informed Libman that if he wished to withdraw as liaison counsel, he should file a motion and submit an accounting of all sums that he received from the class action litigation. The trial court ordered Kabateck to prepare written orders based on the court's rulings.

In May 2019, the trial court entered a written order appointing Kabateck as class counsel. The order directed Kabateck, among other duties, to educate himself on how the settlement was reached, and after evaluating whether the settlement was fair, reasonable, and adequate under all of the

10

circumstances, if he should deem it necessary to protect the interests of the class, to seek appropriate relief on behalf of the class.

On July 3, 2019, in the class action, the trial court entered an order directing Libman to provide an accounting to the court for the funds that he had received, including cash receipts and disbursements, debits and credits, and full dates and recipients of all funds. In addition, Libman was ordered to produce all documents in connection with the class action and related matters reflecting the following information: sums that he received and sums received by anyone, disbursements made from any sums that Libman received and disbursements made to anyone, all time records submitted for compensation, actual time expended by Libman, expenses incurred and expense reimbursements submitted, attorney-client agreements, and agreements among Landskroner, Paradis, Kiesel, Libman, and their related companies. Libman was directed to deliver the accounting and the documents to the trial court by July 12, 2019.

In addition, Libman was ordered to produce to Kabateck by July 12, 2019, all of the original correspondence, pleadings, deposition transcripts, expert reports and other writings reasonably necessary to the representation of Jones and the class, all original documents reflecting Libman's work product, the original and complete file in the class action and in the PWC action, and all original retainer and fee sharing agreements in connection with the PWC action.

On July 22, 2019, in the PWC action, PWC took Libman's deposition. Asked how many potential class members he spoke with before the Jones class action was filed, he said more than 20 people.

At a hearing in the PWC action on July 25, 2019, Libman stated that he began investigating the LADWP billing errors in 2013. Kiesel suggested that Libman act as local counsel, because Kiesel knew Libman had been investigating the billing problem a year before anyone else started work on the case. Although Libman had stated in court and in the mediation that he represented Jones, he admitted that he never met Jones, did not have a written attorney-client agreement with Jones, did not have Jones's consent to represent him, and did not have Jones's consent to any fee arrangement. He asserted that he represented Jones indirectly through Landskroner and did not need the client's consent to be paid, only the court's approval of the fees.

The trial court noted that in response to the court's order for an accounting, Libman provided an envelope containing some time sheets, copies of checks, and invoices. The submission did not qualify as an accounting. The court explained that an accounting was a compilation of debits and credits, cash receipts and disbursements, with explanations of the items. Libman stated that he thought he was supposed to produce the documents supporting the accounting that was already done, not to create a new accounting. The trial court explained the order was to create a new accounting and gave Libman an opportunity to correct the situation by submitting a full accounting by August 30, 2019.

Kabateck requested copies of the documents in the envelope. He noted Libman provided 5 boxes of documents, but had not provided a privilege log. The court directed Libman to provide a privilege log.

At a hearing in the PWC action in August 2019, Libman acknowledged the court's order for a new revised accounting and

12

asked for additional time due to an impending trial. The court granted an extension to September 25, 2019, to file the accounting.

On three occasions, Jones asked Libman for an acceptable date to take his deposition. Libman did not respond to any of the requests. At a status conference on September 24, 2019, the court ordered Libman to cooperate with Jones to schedule his deposition.

## Initial Motion Seeking Disgorgement and Continuing Effort to Obtain Discovery

On September 26, 2019, the City filed a request to dismiss the PWC action with prejudice. That same day, Jones and the City filed a joint application in the class action for an order to show cause regarding issuance of a preliminary injunction requiring disgorgement of approximately $11,755,000 in attorney fees received by Landskroner and Libman.

On September 27, 2019, Libman filed an accounting in the class action consisting of a single page that listed four dates and a total amount of $1,655,805 received from Landskroner for fees and expenses.

Jones sent two emails to Libman asking for deposition dates without receiving a response. On October 9, 2019, Jones sent a notice of deposition and production of documents to Libman. Libman asked Jones to take the deposition off calendar, stating that he would provide information voluntarily. Jones discussed dates with Libman's attorney, but ultimately concluded Libman's offer for an inadmissible confidential meeting was not sufficient.

Libman filed a response to the motion for an order to show cause regarding a preliminary injunction. Jones and the City each filed a reply. A hearing was held on the motion on December 2, 2019. The trial court found there was sufficient evidence to issue an order to show cause regarding a preliminary injunction requiring disgorgement of fees against Landskroner and Libman.

Jones sent another email to Libman requesting dates for his deposition that went unanswered. In December 2019, Jones issued a subpoena to take Libman's deposition on January 15, 2020, which required the production of documents. The deposition subpoena expressly stated that Libman was not a party to the action.

**Initial Motion for Contempt and Continuing Effort to Obtain Discovery**

On January 8, 2020, Jones filed an ex parte application for an order to show cause regarding contempt, fines, incarceration, and sanctions against Libman for failing to provide a complete accounting and privilege log. In opposition to the ex parte application, Libman filed his own declaration. The trial court deemed the ex parte application to be a motion for contempt, ordered a briefing schedule, and set a hearing date in March 2020.

That same day, Libman filed an ex parte application seeking to take the depositions of Kabateck and two of the City's attorneys. He argued the attorneys had submitted executed false and misleading documents in support of the order to show cause regarding a preliminary injunction. He claimed they had

14

knowledge and evidence that other people were responsible for Libman's predicament based on Kabateck's statement, "I suggest you turn your anger and angst toward the fellows who got you into this fine mess."  The trial court denied the request for depositions.

On January 30, 2020, Jones, the City, Landskroner, and Libman filed a stipulation to stay further proceedings on the order to show cause regarding a preliminary injunction for disgorgement of attorney fees and to vacate the scheduled hearing, without prejudice to the City and/or Jones refiling an application for an order to show cause, or similar motion for disgorgement, at a later date.

Libman filed a motion to quash the subpoena for his deposition, which was heard on February 14, 2020.  The trial court found that a subpoena to compel the appearance of a nonparty at a deposition must be personally served.  Because Libman was not served personally, the court granted the motion quashing service of the subpoena.

The trial court noted that Libman continued to be liaison counsel in the class action for limited purposes, with fiduciary duties to the class and to the court.  Based on those duties, the court ordered Libman to produce to the court all of his records for any time expended in connection with the class action by February 24, 2020.  The court ordered Kabateck to prepare an order reflecting the court's ruling.  Kabateck asked whether the order included that Libman must appear for his deposition. The court stated that Kabateck needed to personally serve Libman with a subpoena, and if Libman didn't comply with the subpoena, Kabateck needed to bring a motion to compel.

On February 24, 2020, Libman submitted the very same

15

time records to the court that he provided with his application for attorney fees in 2017. Jones sent a meet and confer letter notifying Libman that the submission of his time records was inadequate.

On March 16, 2020, Jones personally served Libman with a deposition subpoena that is not part of the record on appeal. Due to the coronavirus pandemic, the subpoena was withdrawn in April 2020. After issues created by the pandemic could be resolved through the use of remote depositions, Jones twice asked Libman for dates to hold his deposition and Libman failed to respond.

The motion for contempt was continued and heard on July 9, 2020. Kabateck described Libman's inadequate submissions in response to the court's orders to provide an accounting and the various attempts to schedule Libman's deposition, concluding that holding Libman in contempt was the only way to get the information from him.

The court asked the status of Libman's deposition. Kabateck stated that Libman had been served with a subpoena and twice asked to provide dates for his deposition, but Libman failed to respond. Kabateck acknowledged that he had to take further action with respect to the deposition.

The court asked Libman about appearing for deposition and whether it would be helpful to explain matters in a deposition. Libman, in explaining why he did not want to sit for his deposition, stated that he began working on the DWP problem before Jones became involved. In 2013 and 2014, his mother-in-law was a prospective client. The billing for her house started Libman's investigation.

Kabateck noted that Libman's mother-in-law passed away

in 2012.  Kabateck requested that the court hold Libman in contempt and charge him $1,000 per day until he produced an accounting showing where the money went that he received for fees.

The trial court told Libman, "These are very serious charges made by Mr. Kabateck.  I would like to give you an opportunity to explain all those charges . . . and give you an opportunity to explain in detail all of your receipts and disbursements, all your credits and debits, the accounting.  [I] want to give you an opportunity to explain all the time entries, explain all the emails in response to Mr. Kabateck's charges.  [I'm] going to give you an opportunity to present all evidence of any fraud that you claim.  [¶]  The court is going to order your deposition."  The court ordered Libman's deposition be taken within 30 days, which would include the production of documents.  The court offered to participate if necessary to make rulings on any objections.

Based on the court's statement that he could present all evidence of fraud at his deposition, Libman served subpoenas on Kabateck personally and as the person most knowledgeable for his law firm, seeking testimony concerning the drafting and filing of a post-appointment report in June 2020.  Kabateck filed a motion to quash the subpoenas.

At the same time, Libman filed a motion to revoke the trial court's July 9, 2020 order compelling his deposition.  He argued that the March 2020 deposition subpoena had been withdrawn and no motion to compel Libman's deposition had been filed before the July 9, 2020 hearing.  He was not provided any statutory notice that his deposition would be compelled during the July 9, 2020 hearing.  In addition, he argued that the court

17

lacked jurisdiction to compel his deposition, as he is not a party to the case and there was no authority for this type of deposition.

In response to the motion to revoke the deposition order, Jones argued that the court exercised its inherent power to order Libman's deposition. The court deferred ruling on the contempt motion by ordering alternatively for Libman's deposition.

On September 23, 2020, a hearing was held on several matters in the class action. The court considered the motion to quash Kabateck's deposition subpoenas. The court clarified that by ordering Libman's deposition, the court did not authorize Libman to serve subpoenas and start taking discovery. Kabateck was acting as class counsel, while Libman was a percipient witness who submitted an application for fees, was paid, and had percipient knowledge with regard to the hours worked, services provided, and monies received. The trial court quashed the subpoenas for Kabateck's deposition personally and as person most qualified for his law firm.

The court considered Libman's motion to revoke the July 9, 2020 order compelling his deposition. The court stated that in deferring a ruling on the contempt motion, the court ordered Libman's deposition as an alternative. The court concluded it had inherent power to enforce order in the proceedings before the court, or before a person who was under the court's authority to conduct a judicial investigation, and to compel attendance in a proceeding pending before the court under section 128. A deposition was one of the court's proceedings and Libman was a person connected to the proceedings over whom the court had jurisdiction and may exercise control, as Libman was the liaison counsel for the class and continued in a limited capacity to fulfill his duties with regard to providing an accounting. The court

18

stated that it had invoked its inherent power to control the proceedings and under these circumstances, had authority to order Libman to have his deposition taken in connection with Kabateck's efforts to investigate the settlement and in connection with the order to show cause for contempt. The court had already ordered an accounting and Libman's deposition related to the accounting and supporting documents. Based on the evidence, Libman was a percipient witness with firsthand knowledge of the facts and circumstances relevant to the issues being investigated by Kabateck. The court denied Libman's motion to revoke the order compelling his deposition. The court ordered Libman's deposition be taken on October 23, 2020, and the court would be available to rule on objections.

**Libman's Deposition**

The first date of Libman's deposition was held on October  23, 2020. The trial court was intermittently present to rule on objections. Libman stated he was not listed as an attorney of record on any of the 32 class action cases that he listed in his firm resume in support of the award of fees. He did not recall the names of the cases that he described in the firm resume. Libman refused to answer questions about the work that he performed on the cases on the grounds of privilege. The trial court overruled his objections. Libman objected that he was not a party, simply a witness, and asked to adjourn so that he could file a writ. The trial court overruled his objection. Asked further questions about his purported collaboration with the Kingsley law firm on the cases listed, Libman repeatedly stated that he could not recall.

19

Kabateck asked about the contemporaneous daily time records that were used to create the charts submitted to the court in 2017. Libman stated that in March 2018, he had a data breach of his computer network that paralyzed the hardware and software. He produced a declaration from computer technician Tony Clark that he had filed in March 2018 in a different case. In the declaration, Clark stated that as a result of hardware and software malfunctions, some data on Libman's server was missing, and Clark was in the process of retrieving the data. Libman testified that he continued to experience attempted data breaches.

Kabateck established that Libman's mother-in-law passed away in 2012. Libman stated that his wife and father-in-law were having a billing problem with LADWP, which alerted Libman to the matter. Libman refused on privacy grounds to provide the name of any class representative other than a family member who Libman had talked to before being introduced to Jones in 2015. The court gave Libman an opportunity to conduct research on the issue and submit a brief at the next deposition session.

The second date of Libman's deposition was held on November 13, 2020. The trial court was intermittently present. Asked where he deposited the $1.6 million that he received from Landskroner, Libman refused to answer on the ground that it was private information. The trial court found the information did not invade Libman's personal finances and ordered Libman to answer the question. Libman stated that it was deposited into a business account and refused to answer the question further.

Asked for the name of the bank where he has his personal accounts, Libman refused to answer on the ground that the

information was private and implicated the privilege of his other clients. The court found the name of the bank did not involve any confidential information, overruled the objections, and ordered Libman to answer the question to provide the name of his bank. Libman refused. The court informed Kabateck that he could take appropriate action to enforce the court's orders.

Libman testified that his firm has an accountant. Asked for the name of the accountant, he refused to answer based on his privacy rights. The trial court overruled his objection and ordered Libman to answer the question. Libman continued to refuse to answer and the court informed Kabateck that he could take appropriate action. Libman stated that the contemporaneous daily time records that he used to prepare his fee application were lost or corrupted as a result of hacking in 2018.

Jones asked Libman to provide the names of individuals that he spoke with as a potential class representative. Libman objected on the grounds of privacy for himself and third parties, requesting an opportunity to contact the third parties to consider whether they wanted to be identified. The trial court overruled the objection and ordered Libman to answer the question. Libman refused and the trial court informed Kabateck that he could take appropriate action. Jones attempted to ask Libman about certain email messages and he refused to answer on the basis of the agreement governing the email service. The trial court overruled his objection and ordered him to answer. Libman refused.

Jones asked Libman when he had last spoken to Paradis. Libman refused to answer on the grounds of work product privilege and ongoing investigation. The trial court overruled the

21

objection and ordered him to answer the question. Libman refused to answer despite the court's order.

On November 18, 2020, Jones served a notice of deposition for Libman's computer technician Clark to be held on December 17, 2020.

## Motions for Contempt, Discovery Sanctions, and Disgorgement

On January 4, 2021, Jones filed three motions against Libman. The first was an amended motion for an order of contempt based on violation of the court's orders to produce a comprehensive accounting and related information in the class action, including documents showing the money he received and disbursement of those sums, as well as the names of his bank and his business accountant. The motion described the deposition questions that the trial court ordered Libman to answer, which he refused to answer. Jones requested attorney fees of $44,012.50 in connection with the contempt motion.

Second, Jones filed a motion for disgorgement of attorney fees in the amount of $1.65 million pursuant to sections 128 and 664.6 based on violations of rules 1.1.5, 1.7, and 3.3. The disgorgement motion was based on evidence of the following conduct: Jones never retained Libman; Libman failed to obtain Jones's written consent to divide attorney fees with Landskroner; Libman failed to disclose and obtain written consent from Jones as to Libman's relationships with Paradis and Kiesel; and Libman violated his duty of candor to the trial court by intentionally falsifying his declaration in support of an attorney fees award and failing to disclose material information, including

conflicts of interest, to the trial court prior to final approval. Although the motion was based on the same statutory sections as the prior joint application, it did not seek disgorgement by way of a preliminary injunction. Jones sought a judgment against Libman to recover $1,650,000 in attorney fees and order the disgorged fees be deposited into an escrow account in the names of Jones's counsel and the City's counsel.

Third, Jones filed a motion for discovery sanctions against Libman for violating the trial court's orders to produce a full accounting and respond to deposition questions. The sanctions motion was based on the court's inherent authority and sections 128, 2023.010, 2023.030, 2025.450, and 2025.480. Jones sought monetary sanctions of $116,647.29 and non-monetary sanctions in the form of issue preclusion, evidentiary sanctions, and terminating sanctions.

Jones provided the declaration of class counsel Serena Vartazarian in support of all three motions. Jones also provided the declaration of the independent court monitor Bender. Bender declared that although Libman's billing summary included hours worked in conjunction with the independent court monitor, in Bender's role as independent court monitor, he never had contact with Libman.

Jones submitted the declaration of attorney Eric B. Kingsley. Kingsley stated that he was the managing partner of Kingsley and Kingsley. Libman rented office space from his firm, but was never an employee and did not trade services for rent. Libman was not cocounsel on any of the 32 cases identified in his firm resume. He did not collaborate with Kingsley or anyone at his firm on any of those cases. Libman did no legal work on any of the cases listed, and he did not receive any fees or

compensation on those cases. Libman did work, however, on one class action case with the firm, and Kingsley's father, who was his former partner and since retired, was cocounsel for several personal injury cases with Libman.

Kabateck filed his declaration in support of the motion for disgorgement. He requested the motion for disgorgement replace and supersede the prior joint application for a preliminary injunction as to Libman only.

**Opposition to Motions and Clark's Deposition**

Libman filed a special appearance to challenge the court's jurisdiction and a "preliminary opposition" to the three motions. Among other arguments, Libman asserted that he was not a party to the action and had been relieved of his position as liaison counsel, so an order to show cause regarding contempt could not be served on him by email.

Among other arguments in response, Jones stated that Libman was put on notice of the disgorgement motion in 2019 and had been on notice of the contempt proceedings since January 2020. Both parties and nonparties must be personally served with a contempt affidavit, but personal service was not necessary for an amended motion.

At a hearing on January 27, 2021, the trial court found the pending motion for contempt was a continuation of the contempt proceedings filed in January 2020. In addition, the court found Libman had notice of the intent to seek disgorgement in 2019. The trial court permitted Libman to take Kingsley's deposition. The court reiterated that Libman was not entitled to take Kabateck's deposition.

Libman, on behalf of his computer technician Clark, had filed a motion to quash Clark's deposition subpoena. The trial court denied the motion to quash because Clark's testimony had direct bearing on Libman's claims that his records were permanently destroyed in a cyberattack. Despite the court order, Libman and Clark failed to appear for Clark's deposition.

On February 22, 2021, Libman filed oppositions to the sanctions motion, the disgorgement motion, and the contempt motion. In opposition to the motion for discovery sanctions, Libman argued that section 128 did not provide unlimited authority to create new discovery rules contrary to the discovery statutes or to award attorney fees to punish attorney misconduct. He argued that sanctions under the discovery statutes were authorized only to the extent provided by a particular discovery procedure, each of which referred to a motion to compel, which Kabateck had not sought. It was an abuse of discretion to impose discovery sanctions solely for punishment. He argued that an order must be in writing and he complied with the court's discovery orders. There was no finding that he disobeyed a court order. He also argued that the trial court judge should recuse himself from deciding the motion.

In support of the oppositions, he filed his own declarations. He also filed the declaration of Clark. He filed the declaration of attorney Scott A. Miller, who stated that he worked on half of the cases listed in Libman's firm resume in collaboration or cocounsel arrangements with the Kingsley firm, had often spoken with Libman about the cases, and had also seen Libman frequently speak with the Kingsley firm attorneys.

Jones filed a reply to the opposition to the motion for discovery sanctions. Jones stated the motion for discovery

sanctions was not substantively a second motion for contempt, but an alternative vehicle for holding Libman accountable for disregarding court orders and the judicial process. Libman abused the discovery process by failing to comply with the court's July 3, 2019 order to provide an accounting. Jones argued that section 2025.480, subdivision (a), allowed a party to move the court for an order compelling an answer or production, but did not require a motion to compel before a court could issue sanctions under the discovery statutes. Section 2023.040 required only that the motion for sanctions identify the party and/or attorney against whom the sanctions were sought and specify the sanctions. Moreover, Jones argued, a court may issue sanctions under the discovery statutes on its own if it concludes a party abused the discovery process, as long as the party receives notice and an opportunity to be heard.

Jones also filed replies to the motion for disgorgement of attorney fees and to the opposition to the amended motion for an order of contempt. Jones filed additional evidence in support of the replies, including excerpts from Kingsley's deposition.

**Hearing and Trial Court Rulings**

All three motions were heard on March 4, 2021. Libman made an oral motion for the trial court judge to recuse himself due to bias against Libman, but the court found Libman's statements to be without foundation and denied the motion for recusal.

With respect to the motion for discovery sanctions, the trial court asked, in the event that monetary sanctions were imposed only, whether Libman would comply with the court's orders

26

requiring an accounting and answers to the deposition questions that he had previously refused to answer. Libman was unable to state that he would comply with the court's orders. If evidentiary sanctions were imposed, the court asked if Libman would comply with the court's orders requiring an accounting and answers to the deposition questions. Libman equivocated and refused to state that he would comply with the court's order. The court asked if issue sanctions were imposed, would Libman comply with the orders previously made in the case for an accounting and answers to the deposition questions. Libman insisted that he had already provided an accounting on three occasions, the court's order was not clear, and he did provide answers. The court interpreted Libman's response as refusing to comply.

## A. Ruling on Motion for Disgorgement

The trial court addressed the motion for disgorgement first. Libman's failure to disclose a conflict of interest supported disgorgement of fees. In addition, Libman understood the court was relying on the representations in his declaration in support of his application for attorney fees, yet he intentionally misrepresented substantial portions of his declaration involving his credentials, the time that he devoted to working on the Jones class action, the nature of the work performed, and his paralegal's time. He failed to disclose crucial information about his working relationship with opposing counsel. Had Libman made truthful statements, the information would have had a substantial impact on the court's assessment of whether the fees requested were reasonable or fair. Based on the evidence, the court granted the motion and ordered Libman to disgorge all

27

attorney fees in the Jones class action. The court also ordered disgorgement of undeserved fees paid to Libman by the City.

## B. Ruling on Motion for Discovery Sanctions

The trial court ruled on the motion for monetary and non-monetary sanctions next. The court noted that Jones sought $116,647.29 for reasonable expenses necessitated by Libman's delays and discovery abuse, including investigating facts, conducting research, preparing and arguing multiple motions, preparing multiple meet-and-confer letters, preparing for and taking two deposition sessions, and preparing a comprehensive sanctions motion. In addition and alternatively, Jones requested non-monetary sanctions.

The trial court summarized the actions taken to obtain discovery from Libman and concluded that California's discovery law authorized a range of penalties for conduct that amounted to misuse of the discovery process. The court stated, "Given the revelation that the Jones settlement might have been a product of collusive conduct, this court exercised its authority by appointing attorney Kabateck as new class counsel and by fashioning and overseeing an investigatory procedure, which inherently and expressly involved the use of typical discovery tools. [¶] The court further ordered Mr. Libman to produce a full accounting of records reflecting disbursements to and from his firm bank account and [ ] detailed time records. [¶] These procedures are fashioned in the discovery process, and the issued orders are well within the court's authority."

The court found that Libman failed to produce the full accounting ordered by the court and refused to answer relevant

questions or produce relevant documents, despite his objections being overruled. As a result of ignoring court orders, Libman continuously delayed and impeded the proceedings, resulting in class counsel sending numerous meet-and-confer letters, attending numerous hearings, and filing numerous motions to obtain court-ordered documents and responses. Libman refused to submit to authorized methods of discovery in violation of section 2023.010, subdivision (d); made unmeritorious objections in violation of section 2023.010, subdivision (e); provided evasive responses in violation of section 2023.010, subdivision (f); and disobeyed court orders to provide discovery in violation of section 2023.010, subdivision (g). This conduct amounted to an abuse of discovery under section 2023.010.

The court concluded that it was authorized to impose a monetary sanction under 2023.030. The court stated, "[S]ection 2023.030 provides that a court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising their conduct, or both, to pay the reasonable expenses, including attorneys' fees incurred by anyone as a result of that conduct. [¶] In this case, the fees and costs incurred by class counsel relate to more than a year of class counsel's efforts to obtain the documents and information that the court ordered Mr. Libman to produce on numerous occasions. [¶] In a supporting declaration, Mr. Kabateck, class counsel, has set forth the type of fees and costs incurred, which include, among other things, attorneys' fees relating to investigation, researching, drafting, filing multiple motions, including the instant motion for sanctions, as well as preparing and arguing the discovery issues, . . . reviewing Mr. Libman's document production, and preparing for and taking two sessions of Mr.

29

Libman's deposition. [¶] So based on all the argument submitted and the argument of counsel, the court will award . . . monetary sanctions in the amount of $116,647.29, to go to class counsel, against Mr. Libman and the Law Office of Michael J. Libman."

The court found sanctions were reasonable and warranted, and within the court's authority under section 128 and the discovery statutes. The court ordered as an evidentiary sanction that Libman could not rebut the presumption that no evidence exists where he refused to answer deposition questions pertaining to (1) his accounting, including bank records and the name of his accountant, (2) his detailed time records, (3) his work that he claims he did with the Kingsley law firm, and (4) the names of any potential class representatives Libman claimed to have spoken with prior to 2015.

The court imposed an issue sanction that it be taken as established that Libman performed no substantive work in the Jones matter and served as local counsel for the purpose of filing the complaint and performing minor administerial tasks only.

The court imposed an issue sanction that it be taken as established that Libman did not act as cocounsel or perform work in the 32 class action cases listed in his firm resume.

The court imposed an issue sanction that it be taken as established that Libman did not talk to any potential class representative prior to 2015.

The court also imposed an issue sanction that Libman could not refute an email showing that he routinely transferred questions to Landskroner, rather than perform substantive work in the Jones class action.

In addition, the court ordered that Libman's flagrant conduct merited terminating sanctions. The court found it was

just to strike Libman's opposition to the motion for disgorgement and enter his default on the motion for disgorgement. Libman refused to comply with the court's orders in the event that only monetary and issue sanctions were imposed, and therefore, the court found it must additionally impose terminating sanctions. The court granted the motion for monetary and non-monetary sanctions, including evidentiary, issue, and terminating sanctions.

### C. Ruling on Motion for Contempt

On the motion for contempt, the trial court found it had jurisdiction. Class counsel presented evidence supporting a contempt citation and contempt was warranted. The court ordered Libman held in contempt of court and ordered him to pay $44,012.50 as attorney fees under section 1218, subdivision (a), to class counsel. The trial court's ruling on the contempt motion is not at issue on appeal.

### D. Written Orders and Appeal

On March 24, 2021, the trial court entered written orders granting the motions for disgorgement, discovery sanctions, and contempt. The order granting the motion for disgorgement ordered that Jones and the City were entitled to judgment against Libman and recovery of $1,650,000, with interest until paid. The judgment was immediately enforceable upon entry.

The discovery sanctions order stated it was made pursuant to sections 2023.030, 2025.450, and/or 2025.480. In addition to ordering monetary sanctions of $116,647.29 paid to Kabateck, the

31

sanctions order set forth the issue and evidence sanctions, and ordered terminating sanctions striking Libman's opposition and entering default on the motion for disgorgement. Libman filed timely notices of appeal from the disgorgement order and the sanctions order.

## DISCUSSION

### Discovery Sanctions

Libman contends the trial court had no authority to impose sanctions against him. First, he asserts, the court cannot award monetary sanctions pursuant to the court's inherent supervisory authority, which is codified in the general provisions of section 128. Second, he contends that he was not a party to the action, and under the discovery statutes, sanctions against a nonparty are limited to contempt.

In response, Jones contends the trial court had authority under section 128 to fashion its own discovery procedures. Jones does not contend that Libman was a party to the proceedings. Instead, Jones asserts that under the discovery statutes, Libman was the attorney for a party, rather than a nonparty. Jones further contends that regardless of Libman's specific role in the matter, the trial court was authorized to impose monetary and nonmonetary sanctions for misuse of the discovery process under sections 2023.010 and 2023.030.

We conclude the court properly awarded nonmonetary sanctions pursuant to its inherent authority, but did not have inherent authority to award monetary sanctions. An attorney for a party may be treated as a nonparty under certain statutes, and

during the discovery proceedings, Libman was treated as a nonparty.  We conclude that monetary sanctions were not authorized under the discovery statutes governing oral depositions in California and could not be imposed based solely on the sanctions provisions of sections 2023.010 and 2023.030 alone.

## A.  Standard of Review

"We review an order imposing discovery sanctions under the abuse of discretion standard.  [Citation.]  An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.  [Citations.]  The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law."  (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422 (*New Albertsons*).)

"The trial court's findings of fact that underlie a discovery sanction are reviewed for substantial evidence.  [Citation.]  'In this regard, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact]." ' "  (*Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1137.)

Although appellate review is deferential, a trial court ruling that does not follow the applicable statutes and legal principles is an abuse of discretion.  (*New Albertsons, supra,* 168

Cal.App.4th at p. 1422.) "Statutory interpretation involves purely legal questions to which we apply the independent standard of review. [Citation.] Thus, 'where the propriety of a discovery order turns on statutory interpretation, an appellate court may determine the issue de novo as a question of law. [Citation.]' [Citation.]" (*Haniff v. Superior Court* (2017) 9 Cal.App.5th 191, 198.)

"[O]ur fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)

"In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court, supra,* 39 Cal.4th at p. 83.)

## B. Inherent Authority of the Court

California courts have broad inherent equitable, supervisory, and administrative powers, including inherent power to control the litigation before them. (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 758 (*Slesinger*).) Although the court's supervisory and administrative powers are codified in section 128, they exist apart from the statutory authority. (*Bauguess v. Paine* (1978) 22 Cal.3d 626, 635–636 (*Bauguess*).)[5] The court's inherent authority includes the power to impose evidentiary sanctions as a remedy for litigation misconduct and to dismiss an action for pervasive litigation abuse. (*Slesinger, supra,* 155 Cal.App.4th at p. 758.) "When a plaintiff's deliberate and egregious misconduct in the course of the litigation renders any sanction short of dismissal inadequate to protect the fairness of the trial, California courts necessarily have the power to preserve their integrity by dismissing the action." (*Id.* at p. 762.)

The courts cannot, however, award attorney fees as a sanction for misconduct unless authorized by statute or contract. (*Slesinger*, *supra*, at p. 761.) In *Bauguess*, the Supreme Court explained that courts have sufficient power to punish misconduct

---

[5] Section 128 provides in pertinent part: "Every court shall have power: [¶] . . . [¶] 3. To provide for the orderly conduct of proceedings before it, or its officers; [¶] 4. To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein; [¶] 5. To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

as contempt, which is buffered by legislative safeguards. (*Bauguess*, *supra*, 22 Cal.3d at pp. 637–638.) Approving an inherent power to impose sanctions in the form of attorney fees for misconduct could jeopardize the independence of the bar, undermine the adversary system, and give courts a power without procedural limits, potentially subject to abuse. (*Id.* at pp. 638–639.)[6]

---

[6] We recognize that in *Fairfield v. Superior Court* (1966) 246 Cal.App.2d 113, 115–116 (*Fairfield*), which was decided before the Supreme Court's decision in *Bauguess*, the appellate court referred to the court's inherent supervisory power when it interpreted certain discovery statutes to authorize monetary sanctions. The plaintiff in *Fairfield* served interrogatories on two defendants. One defendant provided responses that the plaintiff considered inadequate and the other did not respond. The plaintiff moved the court for an order compelling further answers, an order holding the other defendant in contempt, and sanctions. Under the discovery statutes in effect at the time, if a party answered interrogatories or stated objections, the proponent could seek an order requiring further responses under former section 2020, but there was no mention of sanctions. (*Fairfield*, *supra*, at p. 119) If a party refused to answer an interrogatory, however, the discovery statutes provided the proponent could file a motion for an order compelling an answer under former section 2034 and the court could impose a monetary sanction, and if the responding party failed to comply with the order compelling responses, the court could impose further sanctions. (*Id.* at pp. 118–19.) The *Fairfield* court relied on the court's inherent power to compel obedience to its orders and the plain intent of the Legislature to interpret the discovery statutes to authorize sanctions in the nature of those provided under section 2034 when a party failed to comply with an order made under section 2030.

Although Libman raises challenges to the nonmonetary sanctions awarded in this case, which are discussed further below, he does not challenge the proposition that the trial court's inherent authority includes the power to impose nonmonetary sanctions. He simply contends that the trial court's inherent authority does not include the power to award monetary sanctions. On that specific point, we agree. Unless the award of monetary sanctions was authorized under the discovery statutes, monetary sanctions must be stricken from the sanctions order. (See *Slesinger*, *supra*, 155 Cal.App.4th at p. 763 [power to impose sanctions under Discovery Act supplements inherent power to deal with litigation abuse].)

### C. Statutory Scheme Governing Discovery

The Discovery Act provides for six methods of civil discovery in separate chapters: depositions, interrogatories, inspections, medical examinations, requests for admission, and exchanges of expert witness information. (§ 2020.010.) The statutes governing each discovery method authorize the court to impose specific types of sanctions under chapter 7 (the sanctions chapter, commencing with § 2023.010) under specific

---

The *Bauguess* court acknowledged the holding in *Fairfield* had relied on the court's inherent supervisory power, but the *Bauguess* court limited the holding to its unique facts. (*Bauguess*, *supra*, 22 Cal.3d at p. 637.) We additionally note the *Fairfield* court did not simply conclude monetary sanctions were authorized under the court's inherent supervisory power, but rather, interpreted certain discovery statutes as authorizing monetary sanctions under the circumstances of that case.

circumstances.

Chapter 6 allows limited discovery to be obtained from nonparties, including oral depositions under chapter 9. (§ 2020.010.)  A party who wants to take the oral deposition of any person must give notice in writing. (§§ 2025.220, subd.(a); 2020.010.)  A deposition subpoena for a nonparty may require testimony, as well as the production of documents, electronic information, and tangible things.  (§ 2020.020, subd. (c).)  A nonparty deponent who disobeys a deposition subpoena under section 2020.220, subdivision (c), may be punished for contempt under the sanctions chapter without the necessity of a prior order of court directing compliance by the witness.  (§ 2020.240.)  The nonparty deponent is also subject to forfeiture of a sum and payment of damages provided in section 1992, which may be recovered in a civil action. (§§ 1992 and 2020.240.)

Chapter 9 governs oral depositions in California.  If a deponent fails to answer any question or to produce any document, electronic information, or tangible thing specified in the deposition notice or subpoena, the party seeking discovery can make a motion to compel the answer or production. (§ 2025.480, subd. (a).)  The court must impose a monetary sanction under the sanctions chapter against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel an answer or production, unless the court finds there was substantial justification or it would be unjust. (§ 2025.480, subd. (j).)

If any deponent fails to obey an order to compel entered under section 2025.480, that failure may be considered a contempt of court.  (§ 2025.480, subd. (k).)  If the disobedient deponent is a party to the action, or an officer, managing agent,

38

or employee of a party, the court may make additional orders against the party with whom the disobedient deponent is affiliated, including issue sanctions, evidence sanctions, or a terminating sanction under the sanctions chapter. (§ 2025.480, subd. (k).) The court may also impose a monetary sanction under the sanctions chapter against the party with whom the deponent is affiliated. (§ 2025.480, subd. (k).)

Section 2023.010 describes general categories of discovery misconduct, but does not specifically authorize the court to impose sanctions for the conduct listed. Section 2023.010 states in relevant part: "Misuses of the discovery process include, but are not limited to, the following: [¶] . . . [¶] (d) Failing to respond or to submit to an authorized method of discovery. [¶] (e) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (f) Making an evasive response to discovery. [¶] (g) Disobeying a court order to provide discovery. [¶] (h) Making or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery. . . ." (§ 2023.010.) Unlike provisions of the Discovery Act that direct the court to impose specific types of sanctions under specific circumstances, there is no language in section 2023.010 authorizing the court to impose a sanction under Chapter 7 or specifying the type of sanction to impose. (*City of Los Angeles v. PricewaterhouseCoopers, LLC* (2022) 84 Cal.App.5th 466, 500, review granted Jan. 25, 2023, S277211 (*City of Los Angeles*).)

Section 2023.030 describes the types of sanctions that are available when another provision authorizes sanctions, but section 2023.030 does not independently authorize the court to impose sanctions for discovery misconduct. (*City of Los Angeles*, *supra*, 84 Cal.App.5th at p. 502, review granted.) Section

2023.030 provides in pertinent part: "To the extent authorized by the chapter governing any particular discovery method or any other provision of this title, the court . . . may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. . . . If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. [¶] (b) The court may impose an issue sanction ordering that designated facts shall be taken as established in the action in accordance with the claim of the party adversely affected by the misuse of the discovery process. The court may also impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses. [¶] (c) The court may impose an evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence. [¶] (d) The court may impose a terminating sanction by one of the following orders: [¶] (1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process. [¶] . . . [¶](4) An order rendering a judgment by default against that party. [¶] (e) The court may impose a contempt sanction by an order treating the misuse of the discovery process as a contempt of court."

40

### D. Libman's Role in the Litigation

In the trial court, Libman was not treated as a party to the proceedings. He was considered an attorney of a party, but not a party. He continually objected that he was not a party to the litigation. The deposition subpoena that Jones issued for Libman stated that Libman was not a party. And the trial court ruled that Libman must be personally served with the deposition subpoena because he was a nonparty. Jones has not argued in the trial court or on appeal that Libman was a party to the proceedings. (*Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 322 ["If a party fails to raise an issue or theory in the trial court, we may deem consideration of that issue or theory forfeited on appeal"].)

Libman was acting as an attorney for the class in a limited capacity, not as a party to any litigation, when the court originally ordered him to produce an accounting and to cooperate in scheduling his deposition. At the time that the initial discovery orders were made, no motion had been filed against Libman. Proceedings on the initial motion related to disgorgement were stayed, and the operative motion for disgorgement was filed along with the motion for discovery sanctions. Based on the facts of this case and the arguments of the parties, we cannot conclude that Libman was a party. (Cf. *Bauguess, supra,* 22 Cal.3d at p. 634, fn. 3 [sanctioned attorney was not a party in the main action, but was made a party of record in a collateral matter by sanctions order].)

Libman is also not an "officer, director, managing agent, or employee of a party." When the Legislature intended a provision to apply to a party's attorney, the statutes clearly state that

relationship.  For example, section 2025.480, subdivision (j), requires the court to impose monetary sanctions against any "party, person, or attorney" who unsuccessfully makes or opposes a motion to compel under that section.  Section 2023.030, subdivision (a), allows the court to impose monetary sanctions under certain circumstances against "one engaging in the misuse of the discovery process, or any attorney advising that conduct."  In this case, no argument has been made that Libman is the "employee of a party."  Libman was an attorney of a party and himself a nonparty.

### E.  Application of the Discovery Act

Libman is correct that the discovery statutes at issue do not authorize the court to impose monetary sanctions against a disobedient nonparty deponent under the circumstances of this case, even if the nonparty is the attorney of a party.

A nonparty who disobeys a deposition subpoena may be punished for contempt under the sanctions chapter.  (§ 2020.240.)  The disobedient nonparty deponent is also subject to forfeiture and payment of damages under section 1992, which may be recovered in a civil action.  (§§ 1992 and 2020.240.)  There is no provision in the statutes governing nonparties that allows monetary sanctions to be imposed under the sanctions chapter.

The sanctions order in this case states that it was brought pursuant to section 2025.480.  Under that statute, if a deponent fails to answer a question or produce a document, the party seeking discovery can move to compel the answer or production, in which case the court must impose a monetary sanction under the sanctions chapter against any party, person, or attorney who

42

unsuccessfully makes or opposes the motion without substantial justification.  (§ 2025.480, subds. (a) and (j).)  In this case, however, no motion to compel was made or opposed.  The trial court simply ordered Libman to answer questions and produce documents without requiring a motion to compel.  Monetary sanctions were not authorized on the basis that Libman unsuccessfully opposed a motion to compel.

If any deponent fails to obey an order to compel entered under section 2025.480, that failure may be considered a contempt of court.  (§ 2025.480, subd. (k).)  Additional sanctions under section 2025.480, subdivision (k), for failing to obey an order to compel may only be imposed against a party.
(§ 2025.480, subd. (k).)  There is no provision of section 2025.480 that authorizes the trial court to impose monetary sanctions under the sanctions chapter against a nonparty, including the attorney of a party, for failing to obey a court order compelling answers or production of documents.

The other discovery statute listed as a basis for the sanctions order, section 2025.450, is clearly inapplicable.  Section 2025.450 provides:  "If, after service of a deposition notice, a party to the action or an officer, director, managing agent, or employee of a party, or a person designated [as the most qualified to testify] by an organization that is a party . . . fails to appear for examination, or to proceed with it, or to produce for inspection any document, electronically stored information, or tangible thing described in the deposition notice, the party giving the notice may move for an order compelling the deponent's attendance and testimony, and the production for inspection of any document, electronically stored information, or tangible thing described in

the deposition notice." (§ 2025.450, subd. (a).)[7] In this case, there was no service of a deposition notice, and Libman does not fall into any of the categories described. He was not a party, he was not an officer, director, managing agent, or employee of a party, and he was not a person designated as the most qualified to testify on behalf of a party.

On appeal, Jones concedes that due to the unique facts and procedural posture of this matter, the parties did not follow the process set forth in the discovery statutes to compel discovery, including serving a deposition subpoena, filing a motion to compel, or obtaining an order under section 2025.480. Instead, Jones contends the court had inherent and statutory authority to order Libman to produce discovery, and when Libman failed to comply with the court's discovery orders, the court had authority to issue monetary and non-monetary sanctions against Libman under section 2023.030.

We disagree. Sections 2023.010 and 2023.030 do not

---

[7] If a motion under section 2025.450, subdivision (a), is granted, the court must impose a monetary sanction under the sanctions chapter in favor of the party who noticed the deposition and against the deponent or the party with whom the deponent is affiliated, unless the court finds there was substantial justification or it would be unjust. (§ 2025.450, subd. (g)(1).) If that party or party-affiliated deponent fails to obey an order compelling attendance, testimony, and production, the court may make those orders that are just, including imposition of issue sanctions, evidence sanctions, or a terminating sanction under the sanctions chapter against that party deponent or against the party with whom the deponent is affiliated. (§ 2025.450, sub. (h).) The court may also impose a monetary sanction under the sanctions chapter against the party with whom the party deponent is affiliated. (§ 2025.450, subd. (h).)

independently authorize the trial court to impose monetary sanctions for discovery abuse, and a sanctions order based solely on sections 2023.010 and 2023.030 without regard to any other provision of the Discovery Act is outside the bounds of the court's statutory authority. Under Jones's interpretation of the discovery statutes, careful distinctions in the statutes between sanctions available against parties and nonparties would be irrelevant surplusage, because the court could impose monetary sanctions against any person or entity disobeying a discovery order regardless of whether a party or nonparty. The award of monetary sanctions must be stricken from the sanctions order.[8]

## F. Financial Privacy

Libman contends it was an abuse of discretion to impose any sanctions against him, monetary or nonmonetary, for refusing to answer questions about his bank records and his

---

[8] Because we conclude monetary sanctions must be stricken from the sanctions order, we need not address Libman's contention that the monetary sanctions awarded were duplicative of monetary sanctions awarded in connection with the contempt order. We also reject Libman's contention on appeal that Jones brought his sanctions motion only as an alternative to the motion for contempt, and therefore imposition of sanctions in addition to those imposed in connection with the contempt proceedings were improper. This is incorrect. The sanctions motion sought sanctions to enforce the discovery orders, which are different sanctions than those that were sought and imposed for contempt. The trial court had authority to impose cumulative sanctions to enforce the discovery orders; Libman has not shown otherwise.

accountant based on his constitutional right to privacy. We disagree.

"Although the scope of civil discovery is broad, it is not limitless." (*Calcor Space Facility v. Superior Court* (1997) 53 Cal.App.4th 216, 223.) In general, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (§ 2017.010.)

Information that is otherwise discoverable, however, may be protected by a constitutional or statutory privilege, such as the right to privacy. "The party asserting a privacy right must establish a legally protected privacy interest, an objectively reasonable expectation of privacy in the given circumstances, and a threatened intrusion that is serious. [Citation.] The party seeking information may raise in response whatever legitimate and important countervailing interests disclosure serves, while the party seeking protection may identify feasible alternatives that serve the same interests or protective measures that would diminish the loss of privacy. A court must then balance these competing considerations." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 552.)

We find no abuse of discretion in the trial court's determination that Libman's right to privacy did not outweigh the parties' legitimate interest in obtaining disclosure of the requested financial information in this case. The order did not seek discovery of the private information of third parties as was at issue in *Board of Registered Nursing v. Superior Court* (2021)

46

59 Cal.App.5th 1011, 1039–1040.

### G.  Electronically Stored Information

Libman also contends the trial court abused its discretion by imposing any sanctions based on electronic information that he purported to have lost.  We conclude substantial evidence supports the trial court's finding that electronically stored evidence was not lost or damaged.

Section 2023.030, subdivision (f)(1), provides: "Notwithstanding subdivision (a), or any other section of this title, absent exceptional circumstances, the court shall not impose sanctions on a party or any attorney of a party for failure to provide electronically stored information that has been lost, damaged, altered, or overwritten as the result of the routine, good faith operation of an electronic information system.  [¶] (2) This subdivision shall not be construed to alter any obligation to preserve discoverable information."  (§ 2023.030.)

The trial court found Libman's evidence not credible that there was responsive electronically stored information that was lost or damaged.  When the trial court ordered Libman to produce an accounting and supporting documents in 2019, he did not claim that his electronic evidence had been lost or damaged in 2018.  He waited more than a year, despite repeated orders by the court to produce discovery, before belatedly claiming the evidence had been destroyed long ago.  He failed to make a computer technician who purportedly examined Libman's computer available for deposition.  The trial court's conclusion that Libman could not produce the requested discovery because he did not work the hours that he claimed, rather than that the

evidence was lost or destroyed, was supported by reasonable inferences from the evidence.

## Disgorgement Order

### A. Scope of Review Following Terminating Sanctions

Having concluded that the trial court properly imposed nonmonetary sanctions, including striking Libman's responsive pleadings and entering Libman's default to the motion for disgorgement, the contentions remaining for consideration on appeal are correspondingly limited. We typically review the trial court's finding of a violation of the Rules of Professional Conduct under the substantial evidence standard and the trial court's conclusion that the violation was sufficiently egregious to require forfeiture of fees for an abuse of discretion. (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 278 (*Mardirossian*).)

Libman's default to the motion for disgorgement and the resulting judgment against him are analogous to other default judgments. Default judgments are reviewable on appeal, but contentions going to the merits are substantively and procedurally barred. (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823.) The default operates as an express admission of well-pleaded factual allegations. (*Ibid*.) The only issues that the defaulted party may raise on appeal from a default judgment are questions related to the court's jurisdiction, the sufficiency of the pleadings, whether the relief awarded exceeded the relief requested in the pleading,

48

and related procedural issues.  (*Id.* at p. 824.)

"[W]hen a party repeatedly and willfully fails to provide certain evidence to the opposing party as required by the discovery rules, preclusion of that evidence may be appropriate, even if such a sanction proves determinative in terminating the plaintiff's case." (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1327.)  "The *ratio decidendi* behind such cases appears to be on the theory that a persistent refusal to comply with an order for the production of evidence is tantamount to an admission that the disobedient party really has no meritorious claim or defense to the action." (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 381–382, emphasis added.)

"An action or proceeding is uncontested when no answer or opposition is filed.  [Citation.]  Appellant's default having been duly entered, the action was uncontested.  By failing to answer the complaint, defendant admitted the material allegations; no fact necessary to support the judgment was disputed." (*E.N.W. v. Michael W.* (1983) 149 Cal.App.3d 896, 899.)

## B.  Nature of Claim for Disgorgement

Libman contends trial court acted in excess of jurisdiction by entering the disgorgement order, because the requirements for an injunction were not met.  We conclude the disgorgement order is a money judgment, not injunctive relief.

"In certain circumstances, a violation of the Rules of Professional Conduct may result in a forfeiture of an attorney's right to fees.  [Citations.] Although the breach of a rule of professional conduct may warrant a forfeiture of fees, forfeiture is not automatic but depends on the egregiousness of the violation."

49

(*Mardirossian, supra*, 153 Cal.App.4th at p. 278.)

"As California courts have often noted, the rule governing attorney forfeiture derives primarily from the general principle of equity that a fiduciary's breach of trust undermines the value of his or her services. [Citations.] 'The remedy of fee forfeiture presupposes that a lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client-lawyer relationship and thereby the justification of the lawyer's claim to compensation.' [Citation.] Forfeiture also serves as a deterrent to misconduct, and it avoids putting clients to the task of proving the harm stemming from the lawyer's conflict of interest when the extent of the harm may be difficult to measure. [Citation.]" (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 89–90 (*Sheppard, Mullin*).)

"The degree to which forfeiture is warranted as an equitable remedy will necessarily vary with the equities of the case." (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 90.) "When a law firm seeks compensation in quantum meruit for legal services performed under the cloud of an unwaived (or improperly waived) conflict, the firm may, in some circumstances, be able to show that the conduct was not willful, and its departure from ethical rules was not so severe or harmful as to render its legal services of little or no value to the client. Where some value remains, the attorney or law firm may attempt to show what that value is in light of the harm done to the client and to the relationship of trust between attorney and client. Apprised of these facts, the trial court must then exercise its discretion to fashion a remedy that awards the attorney as much, or as little, as equity warrants, while preserving incentives to scrupulously

50

adhere to the Rules of Professional Conduct." (*Ibid*.)

"Disgorgement as a remedy is broader than restitution or restoration of what the plaintiff lost. [Citations.] There are two types of disgorgement: restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment. [Citation.] 'Typically, the defendant's benefit and the plaintiff's loss are the same, and restitution requires the defendant to restore the plaintiff to his or her original position.' [Citation.] However, '[m]any instances of "liability based on unjust enrichment . . . do not involve the restoration of anything the claimant previously possessed . . . includ[ing] cases involving the disgorgement of profits . . . wrongfully obtained. . . ." [Citation.] "[T]he public policy of this state does not permit one to 'take advantage of his own wrong' " regardless of whether the other party suffers actual damage. [Citation.] Where "a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust . . . the defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched." ' [Citations.]" (*Meister*, *supra*, 230 Cal.App.4th at p. 398.)

" 'The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. [Citations.] Disgorgement may include a restitutionary element, but it " 'may compel a defendant to surrender all money obtained through an unfair business practice

51

. . . regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.' " [Citation.]  Without this result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct.' [Citation.]" (*Meister*, *supra*, 230 Cal.App.4th at pp. 398–399.)

In this case, the legal relief sought was a judgment for a specific amount of money.  Jones was not required to allege or prove that the class suffered any harm as a result of Libman's egregious violations of the Rules of Professional Conduct.  Libman's contentions based on his assumption that the motion for disgorgement sought injunctive relief are inapplicable.

### C.  Rule Violations

As a consequence of the terminating sanctions in this case, Libman has admitted the allegations of the motion and cannot raise issues contesting the merits for the first time on appeal.  Even were we to address the merits of Libman's contentions, however, we would find no abuse of discretion.

### 1.  Former Rule 2-200

Libman argues that he did not violate former 2-200, subdivision (A) (current rule 1.5.1, subdivision (a)), which prohibits attorneys who are not in the same law firm from dividing fees without obtaining the client's written consent, because the fees were divided pursuant to a court order in accordance with current rule 1.5.1., subdivision (b).  It is undisputed, however, that subdivision (b) of rule 1.5.1 was not in

effect at the time that attorney fees were awarded in the Jones class action, and the version of the rule in effect at the time of the attorney fees award in this case did not contain a similar provision. No abuse of discretion has been shown.

## 2. Former Rule 3-310

On appeal, Libman contends the trial court did not properly analyze the conflicts of interest in the Jones class action under former rule 3-310 (current rule 1.7). Former rule 3-310, subdivision (b), prohibits an attorney from representing a client without providing written disclosure to the client when the attorney has a legal, business, financial, professional, or personal relationship with another person or entity that the attorney knows or reasonably should know would be affected substantially by resolution of the case. As one example in this case, Libman invited Kiesel, who was acting as special counsel for the City, to join him as cocounsel on other trials without disclosing this business and financial relationship to Jones or the trial court. No further analysis was necessary and no abuse of discretion has been shown.

## 3. Former Rule 5-200

Libman contends there is no substantial evidence to support the trial court's finding that he knowingly made a false statement of fact to the court in violation of former rule 5-200 (current rule 3.3). We conclude there is ample evidence to support the trial court's finding. As just one example, Libman listed himself as cocounsel with Kingsley and Kingsley on 32

class action lawsuits.  The evidence showed that he was not in fact cocounsel on any of the cases that he listed.

### 4.  Revision of Rules

For the first time in his reply brief, Libman contends that he was prejudiced because the trial court relied on the current version of the rules, rather than the version that was in effect at the time that the attorney fees award was entered.  Because Libman failed to raise this argument below or in his opening brief, he has forfeited it on appeal.  In addition, although he has described differences in the language between the former and current rules, he has not shown that the outcome in this case would have been different under the former version of the rules.  It is clear that the trial court's findings would have been the same under either version of the rules at issue.

### D.  Denial of Discovery

Libman contends the trial court's denial of his requests to take depositions of current counsel for the Jones class, the City's former outside counsel, former City attorney Jim Clark, Kingsley's retired partner, and the independent court monitor, denied him due process.  We find no abuse of discretion.  Libman has not shown on appeal that any of the requested discovery was relevant to the issues in this proceeding concerning the fee application that Libman submitted and the fees awarded to Libman in 2017.  Moreover, any error was harmless, because Libman's opposition to the motion for disgorgement was stricken and his default entered for failing to comply with his own

54

discovery obligations, as affirmed in this appeal.

### E.  Excessive Fine

Libman contends the disgorgement order is an unconstitutionally excessive fine.  It is not an excessive fine.  It is restitution of the same amount that he received in order to prevent unjust enrichment.  As stated above, the egregious nature of Libman's ethical violations in this case supported complete forfeiture of the fees that he received.

### F.  Trial Court's Authority

Libman contends the trial court exceeded its authority under sections 128 and 664.6 by awarding attorney fees to punish misconduct.  Libman mischaracterizes the court's award.  The disgorgement order is not an award of attorney fees or monetary sanctions to Jones.  The trial court ordered disgorgement of the fees that Libman had received to prevent Libman from being unjustly enriched.  The trial court had inherent authority under sections 128 and 664.6 to provide for the orderly conduct of the proceedings and to order disgorgement of fees awarded in connection with the settlement based on false statements of material fact and egregious violations of ethical rules.

### G.  Recusal

Libman contends that the trial court should have recused itself from this matter.  We have reviewed the record thoroughly.  There is no evidence that the trial court was biased or retaliated

against Libman.  In fact, even after Libman failed to obey multiple discovery orders, the trial court continued to provide him with opportunities to explain his statements in deposition and to present evidence to support his position.  There is no evidence supporting his contentions on appeal concerning recusal.

## DISPOSITION

The March 24, 2021 sanctions order is modified to delete the award of monetary sanctions, and as modified, the sanctions order is affirmed.  The March 24, 2021 disgorgement order is also affirmed.  Respondent Antwon Jones is awarded his costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


I concur:


RUBIN, P. J.

56

**B313095**
**Libman v. City of Los Angeles and Antwon Jones**
**GRIMES, J., Concurring.**

I concur with the majority opinion in the disposition of this case. Specifically, I agree the trial court's disgorgement order should be affirmed, and I agree that nonmonetary sanctions were properly imposed under the trial court's inherent authority to control the proceedings before it.

I write separately to express my continued disagreement with the majority's view that Code of Civil Procedure sections 2023.010 and 2023.030 "do not independently authorize the trial court to impose monetary sanctions for discovery abuse" (maj. opn., *ante,* at pp. 44-45; see *City of Los Angeles v. PricewaterhouseCoopers, LLC* (2022) 84 Cal.App.5th 466, 475, review granted Jan. 25, 2023, S277211). As I explained at length in that case, I find "no basis in statutory law, case law, or common sense" to conclude, as the majority did, that sections 2023.010 and 2023.030 " 'do not authorize the court to impose sanctions in a particular case.' " (*PricewaterhouseCoopers,* at p. 526 (dis. opn. of Grimes, J.).) I instead read those statutes "just as other courts, up to now, have universally done" (*ibid.*), concluding that where "monetary sanctions are authorized in the various discovery statutes for the kinds of discovery violations the trial court found to have occurred," no more is required to enable the trial court to award monetary sanctions under section 2023.030 for "egregious and ongoing misuses of the discovery process" (*PricewaterhouseCoopers,* at p. 530 (dis. opn. of Grimes, J.)).

This case, however, presents an additional factor not present in *PricewaterhouseCoopers*: the monetary sanctions were awarded against former class counsel of record who, as the majority properly

1

concludes, was a nonparty and was treated as a nonparty during the discovery proceedings at issue here. In his brief, Mr. Jones argued (among other points) that monetary sanctions in the form of attorney fees were proper under Code of Civil Procedure section 2023.030 for Mr. Libman's abuse of the discovery process and refusal to comply with court orders.

But at oral argument, current counsel for Mr. Jones and the class essentially conceded, under questioning by the court, that the discovery statutes do not empower the trial court to award monetary discovery sanctions against a nonparty. Counsel indicated this case was different from *PricewaterhouseCoopers*. He agreed the trial court had no authority to order attorney fees as sanctions under its inherent powers, either statutorily or its independent inherent powers. Setting aside the *PricewaterhouseCoopers* issue, counsel stated he could not identify any other discovery statute authorizing monetary sanctions against a nonparty. Counsel stated he was not prepared to argue the issue of the court's authority to award monetary sanctions and did not want that issue to drive the case.

Under these circumstances, where counsel has effectively abandoned the contention that Code of Civil Procedure sections 2023.010 and 2023.030 are a proper basis for a monetary sanctions award against a nonparty—even nonparty class counsel over whom the court retained jurisdiction—I see no reason to weigh

2

in on the point.  Accordingly, I concur in the majority's disposition of the issue in this case.


GRIMES, J.*

---

*    Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.